[Civ. No. 16935.   First Dist., Div. Two.   Apr. 20, 1956.]

THE PEOPLE, Plaintiff and Appellant, v. ONE 1954 CHEV-
ROLET BEL AIR, ENGINE NO. 0855790F54Y, De-
fendant; GENERAL MOTORS ACCEPTANCE COR-
PORATION (a Corporation), Claimant and Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn,
Assistant Attorney General, and Victor Griffith, Deputy At-
torney General, for Plaintiff and Appellant.

Aaron Turner and John Felton Turner for Claimant and
Appellant.

DOOLING, J.—This is a proceeding for forfeiture to the state of an automobile seized while it was being used for the transportation of narcotics. The People appeal from that portion of the judgment of the superior court which recognizes the lien of respondent-appellant, General Motors Acceptance Corporation, against the defendant vehicle in the sum of $1,938.89. The claimant and intervener, General Motors Acceptance Corporation, appeals from the part of the judgment which ordered the defendant vehicle forfeited to the State of California. The default of the registered owner, Lucille Verner, was entered on her failure to appear and answer and there is no appeal taken by her.

The motor vehicle was seized pursuant to Health and Safety Code, section 11611, while it was in the possession of one Lee Spencer with the consent of the registered owner, Lucille Verner.

Health and Safety Code, section 11620, provided at the time this action arose: "The claimant of any right, title, or interest in the vehicle may prove his lien, mortgage, or conditional sales contract to be bona fide and that his right, title, or interest was created after a reasonable investigation of the moral responsibility, character, and reputation of the purchaser, and without any knowledge that the vehicle was being, or was to be, used for the purpose charged." The trial court found and it is not disputed that the conditional sales contract was sold to General Motors Acceptance Corporation for a valuable consideration, was a bona fide contract and that General Motors Acceptance Corporation had no knowledge that the vehicle was being or was to be used to transport narcotics. The court also found: "That the legal owner and claimant General Motors Acceptance Corporation did, prior to the creation of its right, title, and interest in the conditional sales contract under which its interest was created and by which said vehicle was sold to Lucille Verner, make a reasonable investigation of the moral responsibility, character, and reputation of the purchaser, Lucille Verner." It is the position of the People that there is insufficient evidence to support this finding.

The deposition of Mr. Edwin M. Lowe, an employee of General Motors Acceptance Corporation in Abilene, Texas, was read into evidence. He testified that he handled the purchase of retail contracts from automobile dealers and that when such contracts are offered to General Motors Acceptance

Corporation (hereafter referred to as GMAC) by one of their dealers it is his duty to check the contract and make an investigation of the responsibility, reputation and character of the purchaser named in the contract, so that GMAC can determine whether it will buy the contract and assume responsibility for collecting the purchase price. He gave the following account of the transaction involving the vehicle in question:

"On August 11, 1954, Wade Forester, owner of Forester Chevrolet Company of Sweetwater, Texas, called me on the telephone and told me that he was negotiating with Lucille Verner for the sale of a 1954 Chevrolet Belaire automobile. He asked me to make an investigation of her credit and character and reputation from sources and references in California furnished by her. I called the Bank of America at Oakland, California, and was informed by an employee to whom I talked that he could not find any record of a business transaction with Lucille Verner, although she claimed to have financed the purchase of an Oldsmobile from Howard Motor Sales of Albany, California, through this Bank. I then called the Mercantile Acceptance Corporation at Oakland, California, and I learned that it had financed the purchase of a 1949 Ford for Lucille Verner with a loan of approximately $300 to $400, and that her payments had been made promptly as due. I inquired as to her character and morals, and was told that they had no knowledge or information thereof. I then called Howard Motor Sales at Albany, California, and talked to Mr. Howard Rohrer, who identified himself as the owner of the business. I told him who I was and that I was with General Motors Acceptance Corporation in Abilene, Texas. I told him that a Lucille Verner of Oakland, California, was in Sweetwater, Texas, that she was negotiating for the purchase of an automobile and that we had been asked to finance the purchase. I stated that before doing so we were making an investigation both as to her moral and financial responsibility and reputation. I stated that Lucille Verner had informed us that he had known her for a couple of years and was well acquainted with her and that we could get from him whatever information we wished in regard to her. He stated that he sold Lucille Verner a 1952 model Oldsmobile and she made 21 monthly payments on it promptly, and he considered her credit good. I then asked him about her character, morals and reputation, and he stated that he had known her nearly two years and that

he considered her reputation good and said that he had never heard of her being in trouble of any kind and had no knowledge of anything detrimental to her character or moral responsibility. I believe he stated that during a period of nearly two years, he had collected each of the payments on the car she was purchasing then and had transmitted them to the Bank of America in Oakland who had the conditional sales contract on the automobile. After talking with Mr. Rohrer, I then called Wade Forester and told him that based on the information received in my calls to California General Motors Acceptance Corporation would purchase the contract of Lucille Verner, and he then completed the sale of the car to her. This all occurred on August 11, 1954. After we received the contract from Forester Chevrolet Company a day or two later, we paid Forester Chevrolet Company the full contract price less our financing and insurance charges."

He further stated that he never saw or talked to Lucille Verner, the purchaser. He said that prior to the time of the purchase of the contract he had no information that would lead him to believe that the purchaser was not a person of good moral responsibility, character and reputation and that he learned nothing in the course of his investigation that would cause him to suspect that the automobile was to be used in transporting narcotics or for any other unlawful purpose. Mr. Lowe was asked whether it was not a fact that his entire investigation was to determine whether Lucille Verner had the financial ability to pay in accordance with the contractual obligations. He answered: "No. We have certain forfeiture laws in Texas that are comparable to those in California. In addition, the character and reputation of the purchaser is particularly important to us when the purchaser is a colored person. I made three long distance telephone calls to California, one being to Mr. Rohrer, a gentleman in business in an area near the purchaser's home. I was informed that he had known her over a period of some time. Mr. Howard Rohrer was very willing to volunteer the information to me by telephone as to Lucille Verner's reputation and character as I have outlined above. Our investigation was in fact two-fold: I wanted to find out if she paid her bills and I wanted to find out enough about her moral responsibility and character whether she had a good reputation in her community, and I was satisfied this was so as a result of telephone calls to California."

Mr. Howard Rohrer, owner of Howard Motor Sales in Albany, California, testified that in August of 1954 he received a telephone call from Mr. Lowe of the GMAC offices in Texas in regard to Lucille Verner. He told Mr. Lowe in response to questions that he knew Lucille Verner very well and that he had known her approximately two years. He stated that Mr. Lowe inquired as to the character and reputation of Lucille Verner and that he "told him I had considered her one of our very best customers in the colored field . . ." He testified that during the time he knew Lucille Verner he learned nothing derogatory about her and that he "learned nothing at all excepting what I would consider to be flattering to her character."

In attacking the court's finding of reasonable investigation on the part of the claimant the People first point out that the burden is on the claimant to show that it has made the investigation required by Health and Safety Code, section 11620, and that this investigation must be of the moral responsibility, character, and reputation of the purchaser and not limited merely to an inquiry as to his financial standing or credit rating. (*People* v. *One 1953 Pontiac,* 135 Cal. App.2d 195 [286 P.2d 885].) In claiming that GMAC has not met the burden of reasonable investigation imposed on it by Health and Safety Code, section 11620, the People rely heavily on the following language found in *People* v. *One 1939 Buick 8 Coupe,* 43 Cal.App.2d 411 [110 P.2d 1013] : ". . . It would seem that a *bona fide* investigation should, among other essentials, reveal the home address of the prospect, his employer, either past or present, the source of his income, his family or social connections, and as in the case here of a stranger, some inquiry as to his prior location and his standing in that community . . ." It is their contention that the investigation of the purchaser was not adequate when tested by the standards set forth in this case. *People* v. *One 1949 Ford Tudor Sedan,* 115 Cal.App.2d 157 [251 P.2d 776], contains a comprehensive discussion of several cases discussing the sufficiency of the investigation required by the statute. The case relied on above by the People is there referred to as "one of the more extreme cases holding an investigation insufficient as a matter of law." The court seemed to express disapproval of setting forth a specific test of reasonableness to be applied to all situations stating that whether a sufficient or insufficient inquiry has been made is a question of fact, and generally must be governed by the

facts of each case. It did note that there were certain general principles, which had been summarized in *People* v. *One 1940 Buick 8 Sedan,* 70 Cal.App.2d 542 [161 P.2d 264], to be used in testing the reasonableness of such investigations:

"1. The defense that the investigation required by the statute has been made is an affirmative defense, and the burden of proof on the issue rests with the claimant.

"2. The question as to whether a proper investigation has been made is one of fact and is to be tested by the legal standards ordinarily applied to such fact questions.

"3. The statute does not prescribe the maximum or minimum of the investigation that must be made. It requires a 'reasonable' investigation of the factors involved. What is reasonable must be governed by the facts of each case.

"4. An investigation into the financial standing or the credit rating of the car purchaser is not sufficient—the law requires an investigation of the 'moral responsibility, character, and reputation of the purchaser.' " Subject to these general rules it was said that a precise test is impracticable.

In *People* v. *One 1941 Cadillac Club Coupe,* 63 Cal.App.2d 418 [147 P.2d 49], the claimant asked the purchaser's landlord if he knew anything against the purchaser and the landlord replied that he did not. This was stated to be evidence of good reputation. This seems similar to the answer given by Mr. Rohrer to Mr. Lowe in response to a like question. ■ Further, an investigation can sufficiently comply with the law when only one reference is interviewed. (*People* v. *One 1939 Buick Coupe,* 56 Cal.App.2d 163 [132 P.2d 308].) Thus if the interview with Mr. Rohrer was otherwise sufficient, it would not seem that the investigation should be held unreasonable because of the fact that only one person was interviewed with regard to the purchaser's moral responsibility, character, and reputation.

The People argue that the claimant should have been put on notice that the purchaser's moral character, reputation, and responsibility was questionable because she claimed to have financed a car through the Oakland Branch of the Bank of America and his investigation revealed no such transaction. This was a question for the trial court to decide. It should be noted that Mr. Rohrer also told the claimant's investigator that the car in question was financed through this bank. The court could infer that Mr. Lowe reasonably concluded that the employee at the bank contacted by him had not found the

record of such transaction even though one did exist. (It developed that the purchaser had in fact engaged in this business transaction with the Berkeley rather than the Oakland Branch of this bank.) ■ As has been pointed out in several of the cited cases the statute furnishes no standard by which to measure the ''reasonable investigation'' required and much must depend on the facts of each case and the judgment of the trial court thereon. We are satisfied that the evidence is sufficient to support the trial court's finding in this respect.

At the oral argument counsel for GMAC stated that it would not press its appeal if the judgment protecting its lien was affirmed. This makes it unnecessary to consider GMAC's appeal.

Judgment affirmed.

Nourse, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied May 18, 1956, and the petition of plaintiff and appellant for a hearing by the Supreme Court was denied June 6, 1956.