[Civ. No. 5476. Fourth Dist. July 30, 1957.]

THE PEOPLE, Appellant, v. ONE 1950 PONTIAC SEDAN, LICENSE NO. GEX 795, Defendant; THE UNITED STATES NATIONAL BANK OF SAN DIEGO (a National Banking Association), Respondent.

16

Edmund G. Brown, Attorney General, and Morris Schachter, Deputy Attorney General, for Appellant.

Howard H. Taylor for Respondent.

BARNARD, P. J.—In this proceeding, based on section 11610 et seq. of the Health and Safety Code, the state sought to forfeit the interest of Charles H. James as registered owner, and the claimant bank as legal owner, of the vehicle in question. The registered owner did not answer or appear. After a trial, at which evidence was introduced, the court found in favor of the claimant bank and the plaintiff has appealed from the judgment entered. The facts are undis-

puted and the appeal is presented on the clerk's transcript and certain exhibits, including the contracts material to the questions involved.

So far as material here, the court found that on January 4, 1956, Charles H. James, as purchaser, and Houston Motors as legal owner executed a conditional sales contract covering this vehicle; that on January 13, 1956, Houston Motors assigned its interest in that contract to the bank and the bank advanced to Houston Motors the amount of money due to it under said contract; and that the "Automobile Dealer Contract Purchase Agreement" which was by incorporation a part of the contract of assignment between Houston Motors and the bank, provided that all automobile contracts were to be purchased immediately by the bank upon presentation for discount, that after completing a credit investigation of the purchaser if the bank deemed it inadvisable to continue to hold a particular contract Houston Motors agreed to repurchase that contract on demand, and that any such credit investigation was to be completed within 15 days. It was further found that the bank made a reasonable investigation of the moral responsibility, character and reputation of said James between January 13, 1956 and January 28, 1956; that the bank never demanded that Houston Motors repurchase this contract; that the vehicle was seized and impounded on July 14, 1956, because it had been used by James in violation of the narcotic laws; that the unpaid balance on the conditional sales contract was $391; and that this unpaid balance exceeds the value of the vehicle. As one of the conclusions of law it was found that the bank "proved that its interest in said vehicle was created after a reasonable investigation of the moral responsibility, character and reputation of the purchaser thereof."

The appellant contends that this conclusion of law is not supported by the facts found. It is argued that the bank acquired all of Houston Motors' interest in this sales contract, and advanced to Houston Motors the money due it under that contract, on January 13; that these facts clearly show that the bank's interest was created on January 13, before any investigation was made; and that the provisions of the automobile dealer contract purchase agreement do not change this result.

This automobile dealer contract purchase agreement provides, in part, that the bank "will purchase" from the dealer

conditional sales contracts which are ''acceptable to the bank'';
that ''evidence of registration showing the bank as legal owner
must accompany all contracts submitted for purchase''; that
''all automobile contracts to be purchased immediately upon
presentation for discount''; and that if the bank should ''deem
it inadvisable to continue holding said contract,'' after com-
pleting a credit investigation of the purchaser, which is to be
completed within 15 days, the dealer agrees to repurchase it.

In financing the sale of automobiles it is customary for the
dealers to turn in a number of sales contracts to the lender
and receive advances thereon, and to allow the lender a short
time in which to investigate the purchaser and decide whether
or not to accept and hold the lien on any particular car. The
dealer and lender agreement here involved may reasonably be
construed as intended for that purpose, and as intended to
have that result. While one clause of this agreement provides
that all such contracts were to be purchased immediately upon
presentation, it was also provided in other clauses that the
bank was to purchase only such sales contracts as were
''acceptable to the bank''; that the bank was to have 15 days
in which to investigate the buyer; and that if the bank then
deemed it inadvisable to hold a particular contract the dealer
was to repurchase it. When read as a whole, this dealer
agreement indicates that it was intended thereby to allow the
bank a few days in which to investigate and determine whether
or not to accept a particular contract, and that the agreement
for ''immediate'' purchase of any particular contract was thus
qualified. It rather clearly appears from this contract itself
that it was intended that the bank should have 15 days in
which to decide whether or not to accept an assignment of the
contract. As a practical matter, this agreement between the
dealer and the bank provided for a conditional assignment
to the bank which, in effect, amounted to an option to purchase
any particular sales contract within 15 days if, after an inves-
tigation, it proved acceptable to the bank. This agreement
also provided that evidence of registration showing the bank as
legal owner must accompany the submission of a sales contract
for such purchase by the bank. While there is evidence in this
record that an assignment of this sales contract to the bank
was signed by the dealer, there is no evidence in the record
that it was signed or accepted by the bank prior to the making
of an investigation, and no evidence that any evidence of
registration showing the bank as legal owner was delivered
to the bank before the investigation was made.

Section 11620 of the Health and Safety Code, provides in part that the claimant of any interest in a vehicle "may prove . . . that his right, title or interest was created after a reasonable investigation of the moral responsibility, character, and reputation of the purchaser, . . . ." While the controlling question here is as to when the bank's interest in this vehicle was "created," within the meaning of this statute, we think the language used in the statute does not require the strict construction for which the appellant contends. ▮ The purpose of this statute is to relieve the holder of a legitimate lien from the effect of the forfeiture provisions of that chapter of the Health and Safety Code, when such lienholder has made an adequate investigation before the creation of the lien on which he relies at the time the vehicle is seized. A claimant may well have had a different "right . . . or interest" at various times, and it does not clearly appear that the statute was intended to provide that the prior creation of a temporary and conditional interest would destroy the right to such relief, when such prior interest was followed by a more substantial and definite interest upon which the claimant thereafter relied and which was created, in a practical sense, after the required investigation had been made.

It seems clear that this conditional assignment to the bank would create a temporary interest which would remain in effect until the time when the bank found the sales contract to be satisfactory and elected to accept it. But this was not necessarily the same absolute right or interest which the bank held at the time the vehicle was seized and which it was entitled to prove at the trial. When the bank completed its investigation and decided to retain the sales contract its position was materially changed and it may reasonably be said that a new and more definite "right . . . or interest" was then "created," within the meaning of the statute. ▮ In stating that a "claimant" may prove that his "right . . . or interest was created after a reasonable investigation" the statute clearly refers to the right or interest upon which the claimant then relies, and the time when that particular interest was created. It would seem unreasonable to believe that the statute was intended to enforce a forfeiture against the lienholder in such a case as this, where the interest relied on by the lienholder did not become effective until after an investigation was made, merely because some conditional and preliminary steps toward obtaining that interest were taken before the investigation was made.

To so construe the meaning and intent of this statute would not, as appellant contends, defeat the purpose of the statute by allowing automobiles to be left in the hands of narcotic users for 15 days, or longer periods by agreement, during which time the lender would have an interest in the vehicle. During that period the limited right or interest in the prospective lender, even under a dealer contract of this nature, would have been created before the investigation was made, and the forfeiture provisions would apply during that time. After the investigation was made, however, a somewhat different and more definite right and interest came into being or was "created," which interest was the one claimed by the bank in this proceeding. It would be unnecessarily harsh to disregard the investigation which was actually made here, and the acts done in reliance thereon. The wording of the statute does not seem to require that it be given such an application under the circumstances here appearing.

In view of the language used in the statute and the provisions of this agreement between the dealer and the bank, and under the facts found, the trial court could reasonably conclude that the bank had proved that its interest in this vehicle, upon which it then relied, was created after a reasonable investigation within the meaning of the statute.

The judgment is affirmed. By stipulation of the parties, it is further ordered that the appellant and the respondent shall each bear its own costs.

Griffin, J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 25, 1957.