[Civ. No. 23714. Second Dist., Div. Three. Dec. 14, 1959.]

THE PEOPLE, Appellant, v. ONE 1952 MERCURY 2-DOOR SEDAN, SERIAL NUMBER 52 LA 1733 IM, Defendant; GREGORIO H. NUNEZ, Respondent.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and John M. Huntington, Deputy Attorney General, for Appellant.

Max Solomon for Respondent.

VALLÉE, J.—Proceeding for a judgment decreeing that an automobile be forfeited to the state on the ground it had been used to facilitate the unlawful possession of a narcotic. The judgment denied forfeiture. The People appeal.

The court found: 1. On May 1, 1958, Gregorio Nunez was the owner of the automobile. 2. On that day the sheriff seized it. 3. At that time Nunez was the driver and it was under his control. 4. On May 1 Nunez drove the automobile to a residence at 4742 East Hammel Street in Los Angeles County. 5. He drove it to that residence with the intention of obtaining possession of a supply of heroin. 6. On arriving at the residence, Nunez entered it. 7. Thereafter Nunez came out of the residence and was arrested on the premises by the sheriff. 8. The heroin was discovered on the person of Nunez and on the premises outside the residence. 9. Nunez was aware of the nature and presence of the heroin. 10. At the time of the arrest Nunez was returning to the automobile with the heroin. 11. No narcotic drug was discovered in the automobile.

The court concluded: 1. The automobile was not used to facilitate the unlawful transportation of any narcotic. 2. It was not used to facilitate the unlawful keeping, depositing, or concealment of any narcotic. 3. It was not used to facilitate the unlawful possession of any narcotic by the occupant. 4. It was not used unlawfully to transport, keep, or conceal any narcotic. 5. No narcotic was unlawfully possessed by an occupant of the automobile.

The People contend the conclusions of law and the judgment are contrary to the findings; that it appears from the findings the automobile was used to facilitate the unlawful

possession of the heroin by Nunez since he used it to aid him in obtaining the supply of heroin. We have concluded the People's contention is well taken.

Health and Safety Code, section 11610, reads: "A vehicle used to unlawfully transport *or facilitate the unlawful transportation of any narcotic,* or in which any narcotic is unlawfully kept, deposited or concealed *or which is used to facilitate the unlawful keeping, depositing or concealment of any narcotic,* or in which any narcotic is unlawfully possessed by an occupant thereof *or which is used to facilitate the unlawful possession of any narcotic by an occupant thereof,* shall be forfeited to the State."

The italicized part of the statute was added in 1955. (Stats. 1955, ch. 1209, p. 2223.) Prior to the amendment, section 11610 provided a vehicle could be forfeited if used to unlawfully transport any narcotic, or if any narcotic was unlawfully in it, or if any narcotic was unlawfully possessed by an occupant.

Words and phrases are construed according to the context and approved usage of the language. (Civ. Code, § 13.) "Excepting when clearly otherwise intended or indicated, words in a statute should be given their ordinary meaning and receive a sensible construction in accord with the commonly understood meaning thereof." (*County of Los Angeles* v. *Frisbie,* 19 Cal.2d 634, 642 [122 P.2d 526].)

As Mr. Justice Ashburn wrote in *H. S. Mann Corp.* v. *Moody,* 144 Cal.App.2d 310 [301 P.2d 28] (p. 320): "The guiding star of statutory construction is the intention of the Legislature. To the end that it be correctly ascertained the statute is to be read in the light of its historical background and evident objective. [Citations]; 'the objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration in its interpretation.' "

"It is a well-settled rule of statutory interpretation that courts may and should have recourse to available extrinsic aids in order to discover the meaning and purpose of legislation [citations]. Also, in enforcing the command of a statute, both the policy expressed in its terms and the object implicit in its history and background should be recognized." (*Shafer* v. *Registered Pharmacists Union,* 16 Cal.2d 379, 383 [106 P.2d 403].)

The fact that section 11610 was amended to insert the references to facilitation demonstrates an intent on the part of the Legislature to broaden the preexisting law, and it must

be presumed that it was intended to change the statute in all particulars where there is a material change in amended wording. (*Whitley* v. *Superior Court*, 18 Cal.2d 75, 78-79 [113 P.2d 449].) The purpose of the statute is to curb the narcotic traffic. (*People* v. *One 1948 Chevrolet Conv. Coupe*, 45 Cal.2d 613, 618 [290 P.2d 538, 55 A.L.R.2d 572].)

The intent of the Legislature to cover a case such as this by the 1955 amendment is clearly shown by the extract from the proceedings of the ''Subcommittee on Narcotics of the Assembly Interim Committee on Judiciary'' quoted in the margin.[1]

''Facilitate'' means ''1. To make easy or less difficult; to free from difficulty or impediment; as, to *facilitate* the exe-

---

[1]Proceedings of the subcommittee, October 14, 1954, pages 62-65:

''MR. CREIGHTON: . . . Now, that is one observation. Another is that it is felt by members of our Bureau that in Section 11500, in addition to the words 'possess, transport, sell, furnish, administer, and give away,' it would be well to include the word 'facilitate.' We are going to ask for that also.

''JUDGE FRICKE: It isn't necessary, if I might interrupt. 'Facilitating' would be 'aiding and abetting,' and that would be covered by our general statutes, so if somebody facilitates, or helps, or aids, or abets somebody else in violating a narcotic law, he could be prosecuted just as well as though he did the thing himself.

''MR. CREIGHTON: I had something in mind, Judge. The seizure of automobiles, I think, would be made much easier were the word 'facilitate' placed in the law, particularly with reference to the transportation of narcotics. What are your thoughts on that?

''. . . MR. GENTRY: 'Facilitate' does this. Where the individual offender uses a particular vehicle, and though he doesn't use it in the actual physical sale or the actual physical possession of the drug, if he used the vehicle to *facilitate* the sale or possession, the vehicle may be forfeited, and what Mr. Creighton had in mind . . .

''JUDGE FRICKE: How could he facilitate without aiding and abetting?

''MR. GENTRY: Well, if he rode up to the street corner in the vehicle and parked the car and then went around the corner and retrieved the drugs and brought them back and made the delivery, he hadn't used the vehicle to transport the drugs, he hadn't used it to make the sale, but he had used the vehicle to *facilitate* the sale and transportation.

''JUDGE FRICKE: What you want to punish, then, is a person who uses a vehicle in connection with a violation of a narcotic law.

''MR. GENTRY: Yes. That's correct, sir.

''JUDGE FRICKE: I think you can draft a statute that would cover that.

''CHAIRMAN SMITH: Well, should that go in a possession statute? That ought to go. . . .

''MR. GENTRY: In the Vehicle Code.

''MR. CREIGHTON: It would have to appear in a possession statute to start and then it would affect the seizure sections.

''JUDGE FRICKE: Frankly I would amend the forfeiture section of the statute to cover that . . .

''MR. CREIGHTON: But not the possession and the transportation section?

''JUDGE FRICKE: No, I don't think it's necessary to do that, because

cution of a task. 2. To lessen the labor of; to assist; aid." (Webster's New Inter. Dict., 2d ed., p. 908.)

The federal statute reads: "(a) It shall be unlawful . . . (3) to use any vessel, vehicle, or aircraft to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article." (49 U.S.C.A. § 781.)

The federal cases use the dictionary definition of "facilitate." (*Pon Wing Quong* v. *United States,* 9 Cir., 111 F.2d 751, 756; *United States* v. *One 1950 Buick Sedan,* 3 Cir., 231 F.2d 219, 222; *Bruno* v. *United States,* 9 Cir., 259 F.2d 8, 10; *United States* v. *One Dodge Coupe,* 43 F. Supp. 60, 61; *United States* v. *Ford Coupe Automobile,* 83 F. Supp. 866, 867; *United States* v. *One 1941 Pontiac Sedan,* 83 F. Supp. 999, 1001; *United States* v. *One 1951 Oldsmobile Sedan,* 126 F. Supp. 515, 516.)

*United States* v. *One Dodge Coupe, supra,* 43 F. Supp. 60, is directly in point. The court stated (p. 61): "A more difficult question is presented by the issue whether the Dodge was used to facilitate the transportation of the contraband. Subdivision (1) of Section 781(a) subjects to forfeiture a vehicle used directly in transportation. Subdivision (2) similarly subjects to forfeiture a vehicle used for concealment or possession. The Dodge was not used either to transport or to conceal. The contraband never was in the Dodge. The seized automobile was used to bring a person to the place where he obtained the contraband. Was it used so as to facilitate transportation under subdivision (3)?

"In construing the statute we should attempt to give effect to each of its provisions. Subdivision (3) should, therefore, be so construed as to include some situations which are neither transportation nor concealment. An automobile which acts as guide and convoy to trucks laden with contraband would

you are reaching a different situation. What you are trying to do is to forfeit an automobile which is used in connection with the narcotic traffic.

"Mr. Creighton: That's correct.

"Judge Fricke: And regardless of whether it's direct transporting or anything else. Now basically what you are punishing is a person who uses it for transporting.

"Mr. Creighton: That's right.

"Judge Fricke: It might be something short of transporting and still the fellow is morally just as guilty as though he had actually transported it. He is going to transport it just before he gets into the car; for example, he is stopped. Of course, you still could prosecute him for an attempted transportation there, but that would be a little complicated."

surely be engaged in facilitating transportation if not in transportation itself. *United States* v. *One Dodge Sedan,* D.C. Cal. 1928, 28 F.2d 44.

"It can readily be seen that whether any particular connection of a vehicle with contraband, where the contraband is not in the vehicle or in the possession of the occupant of the vehicle, constitutes facilitation, is a question of degree, which is in turn a question of fact not readily susceptible to generalization. Furthermore, the word should be interpreted in its context.

"That facilitation of an act does not embrace the act itself was held in connection with the interpretation of a corporate charter. *Northwestern Improvement & Boom Co.* v. *O'Brien,* 75 Minn. 335, 77 N.W. 989, 16 Words and Phrases, Permanent Edition, p. 10.

"Recourse to the dictionary (Funk and Wagnall's New Standard Dictionary) supplies the following definition: 'Facilitate: to make easy or less difficult; free more or less completely from obstruction or hindrance; lessen the labor of.'

"Was the Dodge used in facilitating the transportation of contraband? By bringing Granza part of the distance over which the contraband would otherwise have to travel in order to reach him, it made that task less difficult and lessened the labor thereof and I, therefore, answer that question in the affirmative.

"This answer is in part prompted by the inescapable inference which must be drawn from the fact that the meeting of the Dodge and the Pontiac was not accidental but prearranged. In other words the Dodge was an instrumentality in a prearranged scheme of transportation which was not completed by reason of the intervention of the narcotic agents."

And in *United States* v. *One 1941 Pontiac Sedan, supra,* 83 F.Supp. 999, it is said (p. 1001): "If an automobile is used by a drug peddler as a 'means' of going to places to negotiate sales of narcotics and as a means of driving therefrom, to later on have the orders filled, and as a means for the joint transportation of himself and a confederate, who makes the delivery of the narcotics for the peddler, the automobile is in my opinion being used to facilitate the sale of narcotics, even though narcotics are not actually carried in the car. . . .

"[P. 1002.] That an automobile is a form of property which is a facility for the illicit traffic in narcotics is evident from the facts in this case. The automobile enables the dope

seller to make himself more elusive in travelling to places where he meets his customers or his confederates. It is more difficult to trail the law violator if he uses an automobile. He can travel greater distances, follow less frequented streets or roads, move about at will and alone, and be completely independent of public means of conveyance. The automobile helps him escape observation, detection and capture. It is an operating tool of the dope peddler's trade.''

*United States* v. *One 1951 Oldsmobile Sedan, supra,* 126 F.Supp. 515, says (p. 516) : ''The addition of the subdivision of the statute concerning facilitating transportation and sale makes it plain that some uses of the car were contemplated which did not involve use of the car directly in the transportation, concealment or possession of the narcotics.

'' 'Facilitate' as used here means that the car was used to make easy, to promote, to help forward the purchase and sale of the heroin.''

*United States* v. *One 1951 Oldsmobile Sedan,* 126 F.Supp. 517, says (p. 518), '' [T]he car was used to transport Evans on his journey to obtain the narcotics, with the money paid in advance for them on his person.

''This would be a use of the car to facilitate the sale and transportation of the narcotics within the meaning of the statute.''

*United States* v. *One 1951 Oldsmobile Sedan,* 129 F.Supp. 321, states (p. 324) : ''Where an automobile is used to lessen the burden or to assist in the task of executing the illegal transaction, even though the drug is never in the automobile, it 'facilitates' the sale or transportation within the meaning of the statute; where, however, the automobile is not in actuality a part of the transaction it does not 'facilitate' within the meaning of the statute.''

Nunez used the automobile as a means to get to the East Hammel Street address to obtain heroin. He obtained the heroin. He was returning to the automobile with it. Obviously his intention was to use the automobile to transport the heroin. The use of the automobile by Nunez was in aid of the transaction; it made purchase of the heroin less difficult; it lessened the labor of Nunez in completing his purpose; it facilitated execution of the task of obtaining it. Manifestly it ''facilitated'' the purchase and possession of the heroin. Tested by the historical background of the statute, the canons of construction, and the authorities to which we have referred, we think that Nunez used the automobile to facilitate the unlawful possession of the heroin in violation of section 11610

of the Health and Safety Code. Any other construction of the facilitation provisions of section 11610 would nullify the 1955 amendment; leave the statute in its prior form; and in effect place a roadblock in the effort of the Legislature to further curb the narcotic traffic.

The judgment is reversed with directions to the superior court to amend its conclusions of law and to render judgment in conformity with this opinion.

Shinn, P. J., and Ford, J., concurred.