[Civ. No. 24476.   Second Dist., Div. One.   July 6, 1960.]

THE PEOPLE, Appellant, v. ONE 1959 MG SPORT COUPÉ LICENSE NUMBER SEG 469, Defendant; CITIZENS NATIONAL BANK, Respondent.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Jack E. Goertzen and Jack K. Weber, Deputy Attorneys General, for Appellant.

Henry Merton for Respondent.

LILLIE, J.—The State appeals from that portion of a judgment releasing a 1959 MG Sport Coupé to the legal owner, Citizens National Bank, respondent herein; the interest of the registered owner was forfeited to the state under section 11610,

Health and Safety Code. The vehicle was seized on June 3, 1959, for a narcotics violation of the registered owner. The Bank, which had become the legal owner of the vehicle under an assignment of a conditional sales contract, filed an answer among other things alleging that prior to the date of the assignment it conducted a reasonable investigation of the moral responsibility, character, and reputation of the registered owner and nothing was learned concerning him to cause it to believe or suspect that he was not of good moral responsibility, character and reputation. The trial was had on September 29, 1959, and the lower court found the vehicle had been used by the registered owner to transport a narcotic. Counsel stipulated that the Bank's transaction with the registered owner was bona fide and entered into in good faith and without knowledge that the vehicle was to be used for the purposes referred to in section 11610, Health and Safety Code. Thereupon, the trial judge advised the Bank that it could rest on the stipulation; that it was no longer necessary for the legal owner to offer proof of a reasonable investigation, and that its lien was protected under the new section (11619) of the Health and Safety Code, amended during the 1959 session of the Legislature and effective September 18, 1959. The Bank however was prepared, and sought, to offer evidence under section 11620 that before it acquired its interest in the vehicle it had conducted the necessary investigation. The court having assumed its position and the deputy attorney general having declared thereunder there was no reason for the Bank to put on further proof, respondent did not do so.

The State contends that the claims of all legal owners of vehicles seized prior to September 18, 1959, are governed by section 11620, Health and Safety Code. It advances the position that the repeal of section 11620 and the several amendments of other sections of the Code effected a substantive, not a procedural, change in the law, thus requiring the court to give it a prospective operation; and that for a legal owner to protect his lien a reasonable investigation must have been made on automobiles seized before September 18, 1959.

June 3, 1959, was the date on which the vehicle was seized and impounded by the State; September 18, 1959, was the effective date of the Legislative amendments to the Health and Safety Code (Cal. Const., Art. IV, § I); and September 29, 1959, was the date of the trial herein. Various sections of the Health and Safety Code amended by the 1959 session of the Legislature are here pertinent.

On June 3, 1959, section 11610 provided: "A vehicle used to unlawfully transport or facilitate the unlawful transportation of any narcotic, or in which any narcotic is unlawfully kept, deposited or concealed or which is used to facilitate the unlawful keeping, depositing or concealment of any narcotic, or in which any narcotic is unlawfully possessed by an occupant thereof or which is used to facilitate the unlawful possession of any narcotic by any occupant thereof, shall be forfeited to the State." On September 29, 1959, section 11610 read: "*The interest of any registered owner of* a vehicle used to unlawfully transport or facilitate the unlawful transportation of any narcotic, or in which any narcotic is unlawfully kept, deposited or concealed or which is used to facilitate the unlawful keeping, depositing or concealment of any narcotic, or in which any narcotic is unlawfully possessed by an occupant thereof or which is used to facilitate the unlawful possession of any narcotic by an occupant thereof, shall be forfeited to the State." (The italicized portion of the statute, constituting the amendment, became effective September 18, 1959.)

On June 3, 1959, section 11619 read: "At the hearing, any owner who has a verified answer on file may show by competent evidence that the vehicle was not used to transport narcotics or to facilitate the unlawful transportation of narcotics, or that narcotics were not unlawfully possessed by an occupant of the vehicle or that the vehicle was not used to facilitate the unlawful possession of narcotics by an occupant thereof." On September 29, 1959, section 11619 provided: "At the hearing, any owner who has a verified answer on file may show by competent evidence that the vehicle was not used to transport narcotics, or that narcotics were not unlawfully possessed by an occupant of the vehicle, *and any legal owner holding a bona fide lien, mortgage or conditional sales contract may show that he acquired his interest without actual knowledge that the vehicle was to be used for the purposes referred to in Section 11610.*" (The italicized portion of the statute was added in 1959, effective September 18, 1959.)

On June 3, 1959, section 11620 read in pertinent part: ". . . The claimant of any right, title or interest in the vehicle may prove his lien, mortgage or conditional sales contract to be bona fide and that his right, title or interest was created after a reasonable investigation of the moral responsibility, character, and reputation of the purchaser, and without any knowledge that the vehicle was being, or was to be, used for the purpose charged but, in any case, a reasonable investigation

of the moral responsibility, character and reputation of the purchaser or mortgagor shall be deemed to have been made if it was made in good faith and it disclosed and the fact also was that: . . ." Effective September 18, 1959, section 11620 in its entirety was *repealed*.

Section 11622, on June 3, 1959, provided: "In the event of such proof, the court shall order the vehicle released to the bona fide or innocent holder, lien holder, mortgagee, or vendor if the amount due him is equal to, or in excess of, the value of the vehicle as of the date of seizure, it being the intention of this section to forfeit only the right, title, or interest of the purchaser." Effective September 18, 1959, section 11622 was amended as follows: "If the court finds that the vehicle was not used for any purposes referred to in Section 11610 and that no narcotic was unlawfully possessed by any occupant thereof, the court shall order the vehicle released to the person entitled thereto. If the court does not so find but does find that the legal owner holding a bona fide lien, mortgage, or conditional sales contract acquired his interest without actual knowledge that the vehicle was to be used for the purposes referred to in Section 11610 and if the amount due him is equal to, or in excess of, the appraised value of the vehicle, the court shall order the vehicle released to such legal owner . . ."

Prior to the 1959 amendments thereto, the automobile forfeiture provisions of the Health and Safety Code did not place an affirmative duty to make an investigation upon a lien claimant, and it was not necessary that he make one; however, if he wanted to protect his interest in a vehicle against possible forfeiture in the future he then, and only then, became obliged to conduct an inquiry (*People* v. *One 1941 Chevrolet Coupé*, 113 Cal.App.2d 578 [248 P.2d 786]). The obvious purpose of section 11620 was to relieve the holder of a legitimate lien from the effect of forfeiture provisions where he assumed the burden of making an investigation of the kind and to the extent required thereunder before the creation of the lien (*People* v. *One 1950 Pontiac Sedan*, 153 Cal.App.2d 15 [313 P.2d 863]; *People* v. *One 1957 Ford 2-Door Sedan*, 160 Cal. App.2d 797 [325 P.2d 676]); and it became well established in our law that before such a lienholder could defend against the forfeiture of his interest (*People* v. *One 1952 Ford Sedan*, 146 Cal.App.2d 183 [303 P.2d 832]; *People* v. *One 1940 Buick 8 Sedan*, 70 Cal.App.2d 542 [161 P.2d 264]; *People* v. *One 1937 Plymouth 6*, 37 Cal.App.2d 65 [98 P.2d 750]), he had to

show that he had assumed that burden (*People* v. *One 1952 Ford Sedan,* 146 Cal.App.2d 183 [303 P.2d 832]; *People* v. *One 1957 Ford 2-Door Sedan,* 160 Cal.App.2d 797 [325 P.2d 676]). ■ The repeal of section 11620 and the 1959 amendments to other sections eliminated the necessity for the legal owner holding a bona fide lien to make an investigation before he could protect his lien on the vehicle seized, which in effect broadened his defense to the forfeiture of his interest in the car, which now, under section 11619, requires him only to show that he acquired that interest without actual knowledge that the vehicle was to be used for the purposes referred to in section 11610. Thus, this change operated on the lienholder's defense to the State's cause of action affecting a substantive right—not on the rules of the court—and as such, it constituted a substantive change and not a procedural one which would affect the remedies, methods of enforcement or rules of evidence (*Anderson* v. *Ott,* 127 Cal.App. 122 [15 P.2d 526]); and following the rule that amendatory acts, no less than original enactments, will not be given retrospective operation on substantive rights in the absence of a declared intention to make them such (45 Cal.Jur.2d, § 28, Statutes, p. 556; *Hibernia Sav. & Loan Soc.* v. *Hayes,* 56 Cal. 297; *Sharp* v. *Blankenship,* 59 Cal. 288; *Booker* v. *Castillo,* 154 Cal. 672 [98 P. 1067]), we deem application of the present law to the bank's interest in the vehicle seized on June 3, 1959, to be in error.

Having construed the change in the law to have the effect of broadening the defense of a bona fide lienholder by eliminating the burden of prior investigation we do not find the several cases relied upon by respondent Bank relating to the abolition of penalties and forfeitures, including *Department of Social Welfare* v. *Wingo,* 77 Cal.App.2d 316 [175 P.2d 262], and *Lemon* v. *Los Angeles Terminal Ry. Co.,* 38 Cal.App.2d 659 [102 P.2d 387], to be applicable. In the case of automobile forfeitures under the Health and Safety Code, prior to the amendments and repeal at bar, automobiles were subject to forfeiture for illegal use; after the change in the law they are still subject to forfeiture, no forfeiture having in fact been abolished. It is true that in *Lemon* v. *Los Angeles Terminal Ry. Co.,* 38 Cal.App.2d 659 [102 P.2d 387], it is suggested that forfeitures, being disfavored and strictly construed, are repealed as if they are procedural laws; but this was predicated on the fact that a forfeiture was actually being abolished— the forfeiture involving a railroad. However, it is the position

of the State that the harsh and strict construction approved in the Lemon case should not, in any event, apply to the forfeiture of vehicles under the Health and Safety Code, for otherwise it would tend to work against police efforts to curb transportation of narcotics and law enforcement under the drug statutes; and thus it has not been applied to automobile forfeitures under those sections. This contention appears to have merit; and clearly it has been recognized in various decisions. The precise point here under discussion has not been *directly* decided by our appellate courts, but without question consideration of this problem entered into their determination in the several cases in which a change in section 11620 had occurred. In fact, the "substantive" interpretation we have given to the change in the law in the instant case seems to follow the analysis heretofore made by our courts in respect to car forfeiture law changes, and in particular with reference to section 11620. The most persuasive case is one decided in November, 1959, after the repeal of section 11620 here involved—*People* v. *One 1953 Mercury etc. Sedan,* 174 Cal. App.2d 435 [344 P.2d 637]. The issue related to the sufficiency of the evidence to support the finding that the lienholder conducted a reasonable investigation within the meaning of section 11620. The judgment was reversed on the ground the evidence failed to show such compliance as the provisions of section 11620 and the decisions thereunder require. Although decided after section 11620 was repealed, the court applied the law as it stood on the date of forfeiture, not the date of its decision; and said, at page 436: "The Legislature at its 1959 regular session repealed Section 11620 and replaced it with Section 11619 providing that 'any legal owner holding a bona fide lien, mortgage, or conditional sales contract may show that he acquired his interest without actual knowledge that the vehicle was to be used for the purposes referred to in Section 11610.' (1959 Stats., ch. 2085, p. 4816, at 4817.) Nevertheless, we apply and construe the section *as it was formulated at the time the instant case arose.* (Citations.)" (Emphasis added.)

This seems to be the interpretation given by the courts in the past to various amendments to this same section. In *People* v. *One 1955 Chevrolet Bel Air* (1958), 157 Cal.App.2d 851 [321 P.2d 870], the state appealed from a judgment forfeiting a car to the state subject to the bank's lien. The state contended the trial court was in error as a matter of law in finding the investigation was reasonable. The bank acquired

its lien at a time prior to the 1955 amendment to section 11620. The action was tried subsequent thereto. Said the court at page 853, "Under the facts presented in this appeal we feel that the section as it stood prior to its amendment in 1955 and as above quoted was the law which governed this action." Similarly, in *People* v. *One 1952 Ford Sedan* (1956), 146 Cal.App.2d 183 [303 P.2d 832], the court based its determination on what section 11620, Health and Safety Code, "provided at the time this action arose" (p. 185), which was prior to the amendment of 1955; as it did in *People* v. *One 1954 Chevrolet Bel Air* (1956), 140 Cal.App.2d 934, 935 [296 P.2d 55].

The courts in these cases, applying the statute as it stood at the time the "action arose," obviously construed the change in the law to be substantive and not procedural. The fact that the last amendment constituted an entire repeal of the section did not seem to change the accepted construction (*People* v. *One 1953 Mercury* (November, 1959), 174 Cal.App. 2d 435 [344 P.2d 637]). The courts' interpretation of these changes adverse to that suggested in the Lemon case and their failure to apply its rule to amendments and repeals in the field of automobile forfeitures, are, no doubt, in part due to the theory that the forfeiture statutes set up in the Health and Safety Code are aimed at controlling the narcotics menace. The automobile is an important facility to the pusher and the addict, and serves as "an operating tool of the dope peddler's trade" (*People* v. *One 1952 Mercury 2-Door Sedan*, 176 Cal. App.2d 220, 226 [1 Cal.Rptr. 245]). Forfeiture is another method of law enforcement, which goes to the very root of narcotic activities, which probably accounts for various expressions in the cases favoring a liberal interpretation of the car forfeiture laws in the Health and Safety Code (*People* v. *One 1949 Ford Tudor Sedan*, 115 Cal.App.2d 157, 170 [251 P.2d 776]; *People* v. *One 1952 Mercury 2-Door Sedan*, 176 Cal.App.2d 220, 226-227 [1 Cal.Rptr. 245]), and such construction of rules of evidence as to aid in their enforcement. (*People* v. *One 1948 Chevrolet Conv. Coupé*, 45 Cal.2d 613 [290 P.2d 538, 55 A.L.R.2d 1272].)

Having held that the change in the law is a substantive one with prospective operation which requires a reversal of the judgment, we deem it necessary that respondent bank be given the opportunity to establish in the lower court a reasonable investigation under section 11620 as it stood prior to the 1959 amendment. Although we do not rule the state now to be in

such a position that it should "not be heard to complain," as suggested by respondent, we feel that the deputy attorney general should not have urged as strongly as he did that it was unnecessary for the respondent to put on evidence of its inquiry. It is true that neither the trial court nor the deputy actually precluded the bank from continuing with its proof, but without question their actions so discouraged the respondent that it is easily understood why it did not further insist.

The record shows that after the state and the registered owner rested, Mr. Merton, counsel for the respondent bank, and the deputy attorney general stipulated "that the bank had no knowledge and acted in good faith"; whereupon the court stated, "You can rest right now, Mr. Merton, on that stipulation." After some discussion between the deputy attorney general and the trial judge, the court again said: "You can rest right now, if you want to, Mr. Merton, on that stipulation." Obviously being dissatisfied with the state of the record, again Mr. Merton attempted to offer proof of an investigation and the court advised, "That is all you need." After further colloquy between the deputy and the trial judge, Mr. Merton then said: "I understand the ruling of the Court is that the stipulation having been made, it is out of order for us to even put on evidence?" The court responded "It is not out of order if you want to put it on. I think you have gone far enough. If you feel you want to put on some evidence as to your investigation, go ahead and do it." However, at that time the deputy strongly interjected "I think it is moot. There is no reason for putting it on . . . Your ruling is that it makes no difference whether there is a reasonable investigation or not, so why put on any evidence?" And again: "Why have him put any evidence in?"—— "He doesn't need any evidence."

For the foregoing reasons the judgment is reversed with directions to the lower court to permit respondent herein to offer proof of a reasonable investigation under section 11620 as it stood prior to the 1959 amendment.

Wood, P. J., and Fourt, J., concurred.