[Civ. No. 30806. Second Dist., Div. Three. July 31, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ONE 1959 PORSCHE COUPE, LICENSE NO. MML 421, SERIAL NO. 107511, Defendant; JOEL E. LYNN et al., Defendants and Appellants.

Lawrence R. Booth for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Stanton Price, Deputy Attorney General, for Plaintiff and Respondent.

SHINN, J.*—The instant appeal is by Joel E. Lynn and Joann M. Lynn from a judgment forfeiting their title to a Porsche coupe upon findings and conclusions that it was used to facilitate the possession of marijuana. The ground of the appeal is insufficiency of the evidence to support the findings. The judgment of forfeiture in this case is without precedent. The facts differ materially from any of which we

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

are aware which were held sufficient to justify forfeiture of an automobile.

There was no evidence that there was marijuana in the car, or that anyone was seen in the car or entering or leaving the car with marijuana in his possession.

There was no evidence from which it could reasonably be inferred that Joel E. Lynn, who was using the car, was on his way to obtain marijuana.

We reverse the judgment because of the absence of evidence that the car was used to facilitate the possession of marijuana. Our statement of the evidence will show that at 2 a.m. Lynn, with a male companion, was on his way to an after-hours jazz spot to drink some beer; without prearrangement he met a friend at a gas station; they drove away and returned in the friend's car; upon their arrest, soon after, while on their way to the jazz spot, each was holding a marijuana cigarette. These are the simple facts of the case.

It is manifest that there was a link missing in the chain of circumstantial evidence upon which the judgment was founded. There was no evidence, direct or circumstantial, that Lynn came to the service station for the purpose of acquiring a marijuana cigarette. The question is this: A man is found on the street in possession of a marijuana cigarette; he came in a car to the place where he was found in possession of the cigarette; he did not have the cigarette in the car; there was no evidence whether he bought the cigarette or it was given to him; does evidence of these facts overcome the presumptions that are favorable to him and warrant a finding that he used the car to facilitate possession of the cigarette? We distinguish this case from those situations in which a car is used as a means of transportation to a place where a narcotic could be purchased or is being used.

 The forfeiture proceeding, while civil in nature, has penal aspects. Insofar as it is regarded as a civil proceeding the proof that will justify a forfeiture is sufficient if grounds for forfeiture are established by a preponderance of the evidence. (*People* v. *One 1940 Chrysler*, 77 Cal.App.2d 306 [175 P.2d 585]; *People* v. *One 1952 Chevrolet Bel Aire*, 128 Cal. App.2d 414 [275 P.2d 509].) The proceeding in its penal aspects invokes rules of evidence not applicable to ordinary civil actions, by which the evidence must be weighed.

In an action to enforce a penalty or forfeiture every intendment and presumption is against the one who seeks to enforce the penalty or forfeiture. (*People* v. *One 1941 Cadillac Club*

*Coupe,* 63 Cal.App.2d 418 [147 P.2d 49].) Chief among the presumptions is the invariable one against the existence of criminal intent or purpose. This presumption, as we shall see, brought into play certain included presumptions as to facts relevant to the issue of intent.

Two witnesses testified for the People: Gomez, a service station attendant, and Wagner, a police officer. The defense produced a character witness for Lynn, who himself did not testify.

Gomez had difficulty in expressing his thoughts in English, but he succeeded in giving a lucid account of what took place in his presence. August 7, 1965, he and another attendant were in charge of a service station at Adams and Crenshaw in Los Angeles. At about 2 a.m. a man, later identified as Lynn, drove up in the Porsche. He had a male passenger. A Nash was stationed on the other side of the pumps. Lynn got out of his car and spoke to the man in the Nash; he said "A long time I don't see you. Where you been?" Fragments of Gomez's testimony were "They go around with the other friend. He was stopped from the side of him and I think they back against the station." The other attendant put gas in the Nash; the men left the station in the Nash and left the Porsche; Gomez did not notice when they came back; the officers came and "I think they take the three guys. The two that was driving the Porsche and they take the one that drive the Nash." The Porsche and the Nash were parked at the station and stayed there two days; "all these pumps I have full of so many customers behind them. . . . The Porsche car that was right over here . . . and then the Nash car coming over here . . . And then the Nash come in the second time and then this gentleman he was coming outside and this other driver of this car, the Nash, this man he know this one and they talk, you know." Gomez saw the three men walk away, headed north.

Officer Wagner testified that about 2 a.m. October 7, 1965,[1] he and his partner were driving west on Adams; they turned north on Crenshaw after a traffic violator in a Pontiac. They stopped him about 150 feet from the corner. It was a predominantly Negro neighborhood. Three Caucasians walked by, headed north on Crenshaw; they seemed out of place in the neighborhood and Wagner watched them; "they were in the act of passing something between them, as one would pass

[1]An obvious mistake. The notice of forfeiture was filed September 17, 1965.

money or any other small object''; The men turned and looked at the officers; one of the men, later identified as Rurup, walked over and said ''Yes, Officer?''; in one hand he had a pack of matches; the other fist was clenched; from his clenched fist he dropped a marijuana cigarette, which Wagner retrieved; the man did not say anything. Another man, later identified as Lynn, made a throwing motion; an object fell to the ground. The men were arrested. After they were searched for weapons Wagner recovered a marijuana cigarette from a nearby lawn. The cigarette was dry, the grass was wet ''from a light fog and dew.'' There was other small debris on the lawn; Wagner examined each single piece of trash ''within the immediate vicinity'' to see if it was wet. The men were searched. From Lynn's pocket Wagner took a package of incense, which, Wagner said, people burn to dispel the odor of marijuana. With the incense was a small bit of debris of a green leafy substance which Wagner believed to be marijuana. The cigarettes were analyzed and found to contain marijuana. There was no evidence except Wagner's opinion that the ''very small minute green leafy substance'' was marijuana.

Lynn told the officers that he had parked his Porsche at the gas station and that they were going to an after-hours jazz spot and drink some beer. The men were driven to the gas station where the Porsche was opened with Lynn's key, and searched; no contraband was found ''to the visible eye.''

Edgar R. Carver, Jr., an attorney, testified that he had been Lynn's commanding officer, U.S. Army Reserve, from 1956 to 1960; Lynn was his field first sergeant; he had been Lynn's attorney in a municipal court case in which Lynn prevailed; he knew Lynn's reputation as a law abiding citizen; it was excellent.

The defendant's attorney argued there was no connection between the vehicle and the marijuana and the court said: ''Except for one thing, counsel. He drove to the gasoline station in the Porsche. Had he not had the Porsche, he probably wouldn't have been able to drive to the gasoline station. . . . The automobile, by the testimony, was used to facilitate the illegal use of a narcotic. This is what the public policy is aimed at. . . . The evidence is clear in the Court's mind that Mr. Lynn did drive the automobile to the gasoline station. He left the station, walked down the street, was in possession of the marijuana cigarette and discarded it. This was seen by the officer and the Court declares the 1959 Porsche forfeited to the State of California.'' This was a statement of the evi-

dence upon which the court relied. The premise did not lead logically, or at all, to the conclusion.

The Attorney General argues ''Accordingly, it was not unreasonable for the court to infer that a meeting at the gas station was arranged, that either as a result of the meeting or because of the meeting, appellant possessed marijuana; and that Lynn had intended to use the Porsche automobile to make this meeting and the possession possible. See *People* v. *One 1952 Mercury 2-door Sedan,* 176 Cal.App.2d 220, 225 [1 Cal.Rptr. 245].''

In the *Mercury* case Nunez had driven to a place where heroin was obtainable, and since he obtained it, and was leaving with it to return to his car when he was arrested, it was a reasonable conclusion that he had driven to the place in order to obtain the narcotic, and it would follow that the car was used to facilitate the accomplishment of his purpose. We would not question the soundness of the opinion, but we reject the effort of the Attorney General to bring the facts of the present case within it. There is no similarity between the facts of that case and the facts of our case. ██ There was no evidence that Lynn drove to the service station to obtain marijuana or that he knew marijuana cigarettes were available there. There was no evidence that Rurup had marijuana or that Lynn had arranged to meet him at the station. Lynn's salutation ''A long time I don't see you. Where you been?'' clearly indicated there had been no recent communication between them. They drove away in Rurup's Nash, evidently to get the cigarettes, but was it a reasonable inference that Lynn planned to meet Rurup in order to be driven by Rurup to a place where marijuana cigarettes could be obtained? We think not. Having obtained the cigarettes and returned to the station the three then started for an after-hours place to drink beer, which would appear to have been their reason for being abroad at 2 o'clock in the morning.

No doubt it is a common occurrence for one who desires to purchase a narcotic to drive directly to the place where it is obtainable. If that is the purpose of the trip he is brought under the rule stated in *People* v. *One 1952 Mercury 2-Door Sedan, supra,* 176 Cal.App.2d 220. It is reasonable to infer from the fact of the purchase that the purpose in going to a source of supply was to obtain the narcotic. No other evidence of this purpose is necessary. This, of course, is not our case.

It is the purpose for which a car is used, not the mere use of it, which determines whether it was used unlawfully. The

intention to use it for an unlawful purpose must be proved by direct evidence or by reasonable inference. If a man leaves his home without marijuana in his possession, the fact that he is later found in possession of a marijuana cigarette, as in the present case, will not warrant an inference that he used his car to facilitate the possession of the cigarette. It must be presumed that he used his car for an innocent purpose until there is evidence sufficient to overcome the presumption. The fact that if he had not had the use of the car he would have stayed at home and would not have gone to the place where he was found in possession of the cigarette would not amount to evidence that he used the car for an unlawful purpose. A suspicious circumstance perhaps, but not evidence. And if, upon these facts, the State would be able to obtain forfeiture of all suspected cars it would soon be in the used car business upon a large scale.

The reasoning of the trial court fails to recognize the absence of evidence that Lynn was driving to the service station in order to obtain the cigarettes. The court merely suspected that he had that intention. The fact that the three men drove from the station and returned in Rurup's car was overlooked in the trial. It was not mentioned by the court or by the Attorney General during the trial, and is not mentioned in the brief of the Attorney General on the appeal. It was a significant fact for the reason that it was the first and only incident which indicated an intention upon Lynn's part to obtain a marijuana cigarette. The court assumed, and the Attorney General argues, that Lynn headed for the service station under an arrangement to meet Rurup and to go some place, known to Rurup, and in Rurup's car, where marijuana cigarettes could be purchased.

Under applicable principles Lynn was entitled to the benefit of the following presumptions: he did not act with an intent to violate the law, and this would lead to factual presumptions that he had not arranged to meet Rurup at the gas station, he did not go to the gas station to obtain marijuana cigarettes and his intention to obtain cigarettes originated after he had met Rurup. There was no evidence to overcome these presumptions.

The trial court gave improper meaning to the word "facilitate." As used in the statute it means to forward the accomplishment of a purpose. As applied by the court it means only to "aid," which does not imply guilty knowledge or a wrongful purpose. "Facilitate" should be given a mean-

ing similar to the word "abet" which, in law, implies action taken with a purpose to reach a planned and unlawful objective. (*Barrett* v. *Board of Osteopathic Examiners,* 4 Cal.App. 2d 135, 139 [40 P.2d 923].)

In these times almost everyone goes from one neighborhood to another by automobile. We hold that when a man is found walking down the street with a marijuana cigarette in his possession the single fact that he came to the vicinity by car furnishes insufficient legal ground for forfeiture of the car. We do not doubt that affirmance of the judgment would open the door to the forfeiture of automobiles without evidence that they had been used in an unlawful activity.

The judgment is reversed.

Ford, P. J., and Cobey, J., concurred.