[Crim. No. 14756. In Bank. June 22, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVE OLIVER ROGERS, Defendant and Appellant.

COUNSEL

R. Eugene Vernon, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Alfred Dovbish, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BURKE, J.—A jury found Dave Oliver Rogers guilty of transportation of marijuana (Health & Saf. Code, § 11531) but acquitted him on a charge of possession of marijuana (Health & Saf. Code, § 11530). He admitted a prior burglary conviction. The court suspended imposition of sentence and placed him on probation. He appeals from the judgment of conviction.

Defendant's principal contentions are (1) that since he was acquitted of the possession charge, he could not be convicted for illegal transportation; (2) that the court erred in failing to instruct the jury regarding the elements of the offense of transportation; and (3) that one who transports marijuana for his own personal use rather than for sale or distribution is not guilty of illegal transportation. We have concluded that possession of marijuana is not a necessary element of the offense of transportation of marijuana, but that the trial court committed reversible error in failing to instruct the jury on its own motion regarding the elements requisite to a conviction for that

offense. We have further concluded that the word "transports" under Health and Safety Code section 11531 may not be construed as referring only to transportation of marijuana for the purpose of selling or distributing the drug to others.

About 2 a.m. on February 8, 1968, Police Officers Olson and Hoffman stopped defendant's car, a two-door Ford, for a traffic violation and for investigation in connection with a robbery. Defendant, age 19, was driving the car; Charles B., age 16, was in the right front seat; and Larry J., age 16, and Eugene Earl,[1] age 21, were on the left and right sides respectively of the rear seat.

At the officers' request defendant and Larry J. got out of the car, and produced identification. Before alighting, the latter made "a furtive movement . . . down behind the seat." Both boys subsequently got back into the car.

Charles B. also got out of the car at the officers' request and while Hoffman was talking to him Detective Sergeant Odiorne arrived. Upon ascertaining that a search for weapons had not been made, Odiorne asked the remaining three occupants in the car to get out. When Earl started to comply, Odiorne saw him kick a matchbox with his right foot. The matchbox fell from inside the car to the pavement, and Olson picked it up and upon examining its contents concluded that the substance was marijuana. An expert confirmed Olson's conclusion and stated that there was enough marijuana to make 8 to 15 cigarettes.

Odiorne and Olson also saw a red pill, which appeared to be a barbiturate known as "red devil," roll from beneath the car. They thereupon went to the left side of the car and saw defendant alighting. On the pavement beneath the left door they found forty red pills containing barbiturates, five plastic packages of methedrine, and four marijuana cigarettes. According to Olson, it would have been possible for anyone on the left side to throw the "merchandise" out.

Defendant and his companions were arrested for possession of narcotics. A search of their persons revealed ziz-zag papers on Charles B.

Larry J. and Charles B. were called to testify by the prosecution. Larry J. testified that he smoked a marijuana cigarette in the car on the night in question, that defendant, Earl, and Charles B. were then present, and that the car was moving at the time.

---

[1]Earl was jointly tried with Rogers solely on the charge of possession of marijuana and was acquitted on that charge. Defendant, as used herein, refers to Rogers.

Charles B. first testified that no one had smoked marijuana in his presence but after being confronted with a contrary statement he had made, he then admitted that he and Larry J. had smoked a marijuana cigarette in defendant's presence while they were "riding around," before Earl got into the car. However, he later testified that when he smoked marijuana defendant was not in the car.

Defendant took the stand in his own behalf and testified that he did not see anyone in his car with marijuana; that he did not know what marijuana looked like, or how it smelled; and that had anyone smoked it he would not have known it was marijuana. He admitted owning the Ford, having purchased it a few days before his arrest.

Earl denied possession of narcotics or having seen the matchbox before an officer showed it to him. He stated that he was picked up by defendant five minutes or less before the officers stopped the car and did not recall anyone smoking marijuana while he was in the car.

Section 11531 provides: "Every person who transports, imports into this State, sells, furnishes, administers or gives away, or offers to transport, import into this State, sell, furnish, administer, or give away, or attempts to import into this State or transport any marijuana shall be punished by imprisonment in the state prison from five years to life . . . ." Similar provisions regarding narcotics other than marijuana and regarding restricted dangerous drugs are contained in sections 11501 and 11912 respectively.[2] Section 11012 provides: " 'Transport,' as used in this division [which includes §§ 11531 and 11501], . . . includes 'conceal,' 'convey,' or 'carry.' "

■ An essential element of the offense of transportation is "Knowledge by the defendant of both the presence of the drug and its narcotic character . . . ." (*Rideout* v. *Superior Court,* 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].) The cases hold that one having the requisite knowledge may be found guilty of illegal transportation if he also has joint or exclusive

---

[2]Section 11501 provides: "Except as otherwise provided in this division, every person who transports, imports into this State, sells, furnishes, administers or gives away, or offers to transport, import into this State, sell, furnish, administer or give away, or attempts to import into this State or transport any narcotics other than marijuana except upon the written prescription of a physician . . . shall be punished" in a specified manner.

Section 11912 provides: "Except as otherwise provided in Article 8 . . . , every person who transports, imports into this state, sells, manufactures, compounds, furnishes, administers, or gives away, or offers to transport, import into this state, sell, manufacture, compound, furnish, administer or give away, or attempts to import into this state or transport any restricted dangerous drug except upon the prescription of a physician . . . shall be punished" in a specified manner.

possession of the drug in a moving vehicle. (*Rideout* v. *Superior Court, supra,* at p. 474; *People* v. *Burke,* 208 Cal.App.2d 149, 162 [24 Cal.Rptr. 912]; *People* v. *Miller,* 162 Cal.App.2d 96, 98 [328 P.2d 506]; *People* v. *Holliday,* 120 Cal.App.2d 562, 564 [261 P.2d 301]; *People* v. *Coleman,* 100 Cal.App.2d 797, 801 [224 P.2d 837].) ■ ■ Possession may be either actual or constructive; the latter is established by showing that defendant maintained some control or right to control over contraband in the physical possession of another. (See *People* v. *Francis,* 71 Cal.2d 66, 71 [75 Cal. Rptr. 199, 450 P.2d 591]; *People* v. *Showers,* 68 Cal.2d 639, 642-644 [68 Cal.Rptr. 459, 440 P.2d 939].)

■ Although possession is commonly a circumstance tending to prove transportation,[3] it is not an essential element of that offense and one may "transport" marijuana or other drugs even though they are in the exclusive possession of another. (*People* v. *Valerio,* 13 Cal.App.3d 912, 921 [92 Cal.Rptr. 82]; *People* v. *Vasquez,* 135 Cal.App.2d 446, 448 [287 P.2d 385]; *People* v. *Watkins,* 96 Cal.App.2d 74, 76 [214 P.2d 414]; see 2 Witkin, Cal. Crimes (1963) p. 644; but see *People* v. *Solo, supra,* 8 Cal. App.3d 201, 206; *People* v. *Sanders,* 250 Cal.App.2d 123, 134 [58 Cal. Rptr. 259].) For example, were defendant shown to have aided and abetted his passengers in carrying, conveying or concealing drugs in their possession, his conduct would have sustained a conviction of transportation. (Cf. *People* v. *Francis, supra,* 71 Cal.2d 66, 72.) ■ Therefore, it is apparent that defendant's acquittal of the possession charge did not necessarily preclude conviction of transportation.[4]

■ Nor can we agree with defendant's further contention that the offense of illegal transportation requires a specific intent to transport contraband for the purpose of sale or distribution, rather than personal use. Neither the word "transport," the defining terms "carry," "convey," or "conceal," nor section 11531 read in its entirety, suggests that the offense is limited to a particular purpose or purposes.

---

[3]In cases where defendant's possession is incidental to, and a necessary part of, the transportation charged, and no prior, different or subsequent possession is shown, the offense of possession is deemed to be necessarily included in the offense of transportation, and defendant may not be convicted of both charges. (*People* v. *Solo,* 8 Cal.App.3d 201, 208 [86 Cal.Rptr. 829]; *People* v. *Richardson,* 6 Cal.App.3d 70, 78 [85 Cal.Rptr. 607]; *People* v. *Johnson,* 5 Cal.App.3d 844, 847 [85 Cal.Rptr. 238].)

[4]To the extent that *People* v. *Solo, supra,* 8 Cal.App.3d 201, and *People* v. *Sanders, supra,* 250 Cal.App.2d 123, suggest that possession is a necessary element to the offense of transportation, those cases are disapproved.

We also point out that under Penal Code section 954, an accusatory pleading may charge two or more different offenses connected in their commission or different statements of the same offense and that "An acquittal of one or more counts shall not be deemed an acquittal of any other count." (See Witkin, Cal. Criminal Procedure (1963) pp. 558-560, and cases cited.)

It should be noted that section 11531 not only prohibits transporting marijuana, but also importing, selling, furnishing, administering, or giving it away. The prohibitions are in the disjunctive—not the conjunctive—and nothing in that section exempts transportation (or importation) of marijuana for personal use. Had the Legislature sought to restrict the offense of transportation to situations involving sale or distribution, it could easily have so provided. For example, section 11530.5, enacted in 1961, provides that "Every person who *possesses for sale* any marijuana except as otherwise provided by law shall be punished" as specified. (Italics added; see also § 11500.5.)

Thus, the courts of this state have consistently applied section 11531 and similar sections to situations involving the knowing conveyance of narcotics or drugs in a moving vehicle, whether or not the evidence disclosed that the contraband was intended for sale or distribution. (See *Rideout* v. *Superior Court, supra,* 67 Cal.2d 471 [small quantity of marijuana found in car; no indication of intent to sell or distribute]; *People* v. *Johnson, supra,* 5 Cal.App.3d 844, 847 [one amphetamine pill]; *People* v. *Miller, supra,* 162 Cal.App.2d 96 [one marijuana cigarette consumed in moving vehicle]; *People* v. *Coleman, supra,* 100 Cal.App.2d 797, 801 [31 grams of heroin]; *People* v. *Watkins, supra,* 96 Cal.App.2d 74 [$12.50 bag of marijuana]; see also *People* v. *Sanders, supra,* 250 Cal.App.2d 123, 134 [possession of drugs transported need not be possession for purpose of sale]; *People* v. *One 1940 Buick 8 Sedan,* 70 Cal.App.2d 542, 546-547 [161 P.2d 264], "Traffic in drugs is not made an indispensible element . . . [of section 11610, regarding forfeiture of automobile used to 'transport' narcotics].") Moreover, in *People* v. *Gurrola,* 218 Cal.App.2d 349, 352 [32 Cal.Rptr. 368], the court specifically rejected the claim that it was improper to convict for transporting heroin (§ 11501) unless it were shown that the act of transportation was linked to some other aspect of the crimes mentioned in that section (i.e., importing, selling, furnishing, etc.).

Recently, in an unanimous opinion in *People* v. *Cressey,* 2 Cal.3d 836, 848-849 [87 Cal.Rptr. 699, 471 P.2d 19], we established the principle to be applied in cases under Health and Safety Code section 11556 (presence in place where narcotics are used) that "in one's own residence *or automobile* one may have the responsibility to prevent the use of the narcotic for illegal purposes in that one has some control over the premises or vehicle." (Italics added.) An analogous principle should apply in cases under section 11531. Regardless of his purpose or intent, the driver or owner of an automobile has the responsibility to prevent the conveyance of contraband by himself or his passengers, at least while that vehicle is under his dominion or control. ■ Proof of his knowledge of the char-

acter and presence of the drug, together with his control over the vehicle, is sufficient to establish his guilt without further proof of an actual purpose to transport the drug for sale or distribution. (See *People* v. *Cressey, supra,* 2 Cal.3d 836, 847-849; *People* v. *McGrew,* 1 Cal.3d 404, 414 [82 Cal.Rptr. 473, 462 P.2d 1], (dissenting opn. by Mosk, J.); *Rideout* v. *Superior Court, supra,* 67 Cal.2d 471, 474.)

■ In 1970 the Legislature amended the penalty provisions of sections 11501, 11531, and 11912 (Stats, 1970, ch. 1098, §§ 3, 9 & 16) but did not change the basic substantive provisions of those sections, thereby presumably acquiescing in the construction given to those sections by the decisions discussed above. (*Stafford* v. *Realty Bond Service Corp.,* 39 Cal. 2d 797, 805 [249 P.2d 241]; 45 Cal.Jur.2d, Statutes, § 101, and cases cited.)

Defendant asserts that "the most compelling explanation for the vast disparity between punishments of . . . section 11530 and 11531[5] is that section 11531 applies to those who by their transportation of marijuana have increased the risk of harm to others in the society," suggesting that a person who transports marijuana or other drugs for his own use has not increased that risk. However, the Legislature was entitled to assume that the potential for harm to others is generally greater when narcotics are being transported from place to place, rather than merely held at one location. The Legislature may have concluded that the potential for increased traffic in narcotics justified more severe penalties for transportation than for mere possession or possession for sale,[6] without regard to the particular purpose for which the transportation was provided, a matter often difficult or impossible to prove.[7] Moreover, a more severe penalty for those

---

[5]Section 11530 provides for imprisonment in the county jail for not more than one year, or in the state prison from one to ten years. Section 11531 provides for imprisonment in the state prison for five years to life and further provides that a violator "shall not be eligible for release upon completion of sentence, or on parole, or on any other basis until he has served not less than three years." Both sections provide for increased penalties in the event of one or more specified prior convictions.

[6]Section 11530.5 provides that illegal possession of marijuana for sale is punishable "by imprisonment in the state prison for not less than two years nor more than 10 years," and that the violator "shall not be eligible for release upon completion of sentence, or on parole, or on any other basis until he has served not less than two years in prison." The section also provides for increased penalties in cases of certain prior convictions.

[7]With respect to heroin it has been stated, "Because of the hazards of the business, a narcotics peddler will not usually carry a large amount of heroin on his person or in his car. When a customer is found, the peddler will go to the place where he has hidden his supply of narcotics and return with the amount of heroin requested." (See Interim Reports of Special Study Commission on Narcotics (1961), Appendix to Journal of the Senate, vol. 2, p. 34.) If en route the police lawfully stop him in connection with a different offense and legally find the heroin, it could well be impossible to prove the peddler's purpose in transporting the heroin.

who transport drugs may have been deemed appropriate to inhibit the frequency of their own personal use and to restrict their access to sources of supply, or to deter the use of drugs in vehicles in order to reduce traffic hazards and accidents, as well as to deter occurrences of sales or distributions to others. The relative privacy and increased mobility afforded by the automobile offers expanded opportunities for the personal use and acquisition of drugs; greater penalties may legitimately be imposed to curtail those opportunities. ■ In any event, in the absence of any legislative intent to the contrary, we conclude that section 11531 requires only a knowing transportation of marijuana, whether for personal use, sale, distribution or otherwise.

■ In the instant case, however, the trial court failed to give adequate instructions to the jury with respect to the element of knowledge, an essential element of the offense of transporting marijuana. Although the jury was instructed that knowledge by defendant of both the presence of the drug and its narcotic character is essential to a conviction of illegal *possession* of marijuana, the instructions did not state that such knowledge is also a prerequisite to a conviction for illegal *transportation*.[8] (*Rideout* v. *Superior Court, supra,* 67 Cal.2d 471, 474.)

The record does not show that defendant requested an instruction advising the jury that the foregoing element was essential to a conviction for illegal transportation. ■ However, "The general rule is that the court must instruct the jury on the general principles of law relevant to the issues raised by the evidence, even though not requested to do so, but need not instruct on its own motion on specific points developed at the trial. [Citations.] In *People* v. *Wade* . . . [53 Cal.2d 322, 324 (1 Cal.Rptr. 683, 348 P.2d 116)], we pointed out that the 'general principles of law governing the case' are 'those principles of law commonly or closely and openly connected with the facts of the case before the court.' " (*People* v. *Hood,* 1 Cal.3d 444, 449 [82 Cal.Rptr. 618, 462 P.2d 370].)

■ Here the principle of knowledge was "commonly or closely and openly connected with the facts of the case before the court," and the court was therefore required to give an instruction regarding knowledge *sua sponte*. (Cf. *People* v. *Ford,* 60 Cal.2d 772, 792-793 [36 Cal.Rptr. 620,

---

[8]The court read to the jury the count in the information charging that defendant "did wilfully and unlawfully and feloniously transport marijuana." The court further instructed the jury that "every person who possesses or transports any narcotic such as marijuana in an amount sufficient to be used as a narcotic, is guilty of a crime." Other instructions specified the essential elements of illegal possession but no further instructions were given defining the offense of illegal transportation. The word "wilfully" was insufficient to charge the jury to find that defendant acted with the requisite knowledge. (See *People* v. *Gory,* 28 Cal.2d 450, 458 [170 P.2d 433].)

388 P.2d 892] [court required to instruct *sua sponte* in a prosecution for robbery that an essential element is a specific intent to steal]; *People* v. *Bowens,* 229 Cal.App.2d 590, 595 [40 Cal.Rptr. 435] [court required to instruct *sua sponte* in prosecution for illegal possession of narcotics that an essential element is knowledge of the narcotic character of the substance possessed]; *People* v. *Longino,* 222 Cal.App.2d 734, 738 [35 Cal.Rptr. 367] [court required to instruct *sua sponte* in a prosecution for offering to sell marijuana that an essential element is a specific intent to sell marijuana].)

*People* v. *Graham,* 71 Cal.2d 303, 329 [78 Cal.Rptr. 217, 455 P.2d 153], which involved the question whether the court adequately instructed the jury on the elements of first degree robbery, stated, "The general rule which provides that in defining the elements of a crime it is enough for the court to instruct in the language of the statute when the defendant fails to request an amplification thereof [citation] will not prevail when the jury would have difficulty in understanding and applying the statute. Under such circumstances, a court must give additional guidance and clarification on its own motion. [Citations.]" In the instant case it seems clear that the jury would have difficulty in understanding and applying the illegal transportation statute without clarification by the court regarding the element of knowledge.

The People, in arguing that the court did not err in failing to give a clarifying instruction, cite *People* v. *Burke, supra,* 208 Cal.App.2d 149, 162, 164, which states, "Considered as a whole the instructions told the jury that the defendant was charged with transportation of narcotics and that such activity was unlawful. So far as the gravamen of the accusation was concerned, this was the general principle of law governing the case," and "The court did not err in failing to instruct the jury what the word 'transportation' meant since it is 'well understood by all persons of average intelligence.' (*People* v. *Bill* . . . 140 Cal.App. 389, 397 [35 P.2d 645].)" The quoted language, however, must be read in the light of the contention there made, namely, that "No instruction was given . . . *describing the offense of transporting* either narcotic involved, thus removing *a vital element of the offense* from the jury's consideration." (Italics added.) Although not entirely clear, apparently the court was concerned solely with whether an instruction should have been given defining the word "transportation" and not with whether an instruction should have been given regarding knowledge.

Moreover, it seems quite doubtful that persons of average intelligence would realize that the term "transportation" includes an element of knowledge. Under the instructions given, the jurors could reasonably have as-

sumed that one who drives a car containing marijuana is guilty of transporting it, whether or not he knew of its presence and character.

From our examination of the record, it is reasonably probable that a result more favorable to defendant would have been reached had proper instructions been given. (Cal. Const., art. VI, § 13; *People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].) As we have seen, defendant denied knowing what marijuana looked like, or how it smelled, and testified that he did not see anyone in his car with marijuana and that had someone smoked it he would not have known it was marijuana, and there was not strong evidence to the contrary.

The judgment is reversed.

Wright, C. J., McComb, J., and Sullivan, J., concurred.

**MOSK, J.**—I concur in the judgment of reversal, but dissent from the majority's conclusion (*ante,* p. 137) that to be guilty of the crime of "transporting" marijuana as defined in Health and Safety Code section 11531 "requires only a knowing transportation of marijuana, whether for personal use, sale, distribution or otherwise."

Under the majority's reading of section 11531, the severe penalties there prescribed could be inflicted on every person who is found to be in possession of a small quantity of marijuana for his personal use but happens at the time to be in motion, either in a vehicle, on foot, or otherwise. When the statute is viewed, as it must be, in the context of the. Legislature's deliberate and detailed plan for the control of illicit narcotics and dangerous drugs, it is not reasonably susceptible of the construction placed upon it by the majority. On the contrary, that construction violates settled principles of statutory interpretation, ascribes irrationality and injustice to the legislative scheme, and runs counter to both the spirit of a recent ameliorative enactment and the practice of the trial courts and prosecutors charged with enforcement of the law.

I

Health and Safety Code section 11531 currently provides in relevant part that "Every person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport any marijuana shall be punished by imprisonment in the state prison for a period of five years to life and shall not be eligible for release upon completion of sentence or on parole or any other basis

until he has been imprisoned for a period of not less than three years in the state prison."[1]

The Legislature has not seen fit to enact an all-embracing statutory definition of the word "transport" as used in section 11531. It is true that section 11012 speaks on the matter, but it furnishes a partial definition only: " 'Transport,' as used in this division, with reference to narcotics, *includes* 'conceal,' 'convey,' or 'carry.' " (Italics added.) As this court explained in *People* v. *Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 639 [268 P.2d 723], "The term 'includes' is ordinarily a word of enlargement and not of limitation. [Citation.] The statutory definition of a thing as 'including' certain things does not necessarily place thereon a meaning limited to the inclusions." (Accord, *People* v. *Horner* (1970) 9 Cal.App. 3d 23, 27 [87 Cal.Rptr. 917].) As used in section 11012, "includes" is not a term of limitation: it denotes the listing of certain items "as a part or component of a whole or of a larger group, class, or aggregate" (Webster's New Internat. Dict. (3d ed. 1961), p. 1143), and is thus used in the commonplace sense of "includes, but is not limited to" the named instances of that larger group. As a word of enlargement, the term is thus a drafting device to expand rather than contract a definition, by incorporating therein meanings which would not otherwise be part of the layman's understanding of the word defined. That it is used in this sense in section 11012 is easily demonstrated by comparing the language of companion sections of article 1 ("Definitions") of chapter 1 of division 10 ("Narcotics") of the Health and Safety Code: where the Legislature intends a comprehensive, limiting definition, the word in question is declared to "mean" its definiens; but where, as here, the definition is intended to illustrate or enlarge the concept, the definiendum is simply declared to "include" certain more or less related terms.[2]

---

[1]The second paragraph of section 11531 provides that if such a person has previously been once convicted of a felony narcotics offense or certain "restricted dangerous drugs" offenses, his term shall be five years to life with a minimum imprisonment of five years. The third paragraph provides that if he has been previously convicted two or more times of such offenses his term shall be ten years to life with a minimum imprisonment of ten years.

To put the gravity of this matter in its proper perspective, it may be noted that the punishment for even a first offense under section 11531 is more severe than that imposed for mayhem (Pen. Code, § 203), assault with a deadly weapon (Pen. Code, § 245), assault with intent to commit murder (Pen. Code, § 217), voluntary manslaughter (Pen. Code, § 193), forcible rape (Pen. Code, § 264), and arson (Pen. Code, § 447); it is equal to armed robbery (Pen. Code, § 213) and second degree murder (Pen. Code, § 190), except that the robber and the murderer are not subject to an automatic minimum imprisonment without possibility of parole for three years.

[2]Compare, for example, the definition of "owner" of a vehicle in section 11013 (owner "means" a person with any title to or interest in the vehicle), with that of "sale" in section 11008 (sale "includes" such disparate conduct as barter, exchange,

Properly construed, therefore, section 11012 tells us only that as used in division 10 of the code "transport" means, *among other things,* "conceal," "convey," and "carry." Inasmuch as the word bears many additional connotations, it remains our task to determine which meaning will most faithfully effectuate the Legislature's intent in enacting section 11531. For such purpose the definition contained in section 11012 is, it must be admitted, of negligible assistance. "Convey" and "carry" are merely synonyms of "transport,"[3] and add nothing to the common understanding of the word. And the statutory reference to "conceal" is at best obscure: even the majority do not contend that one who merely "conceals" on his person a small quantity of marijuana for his own use—e.g., by putting a marijuana cigarette in his pocket—is ipso facto guilty of "transporting" that substance under section 11531.[4]

## II

Lacking a legislative definition of the word "transport" as used in section 11531, we are remitted to an analysis of that section in the light of settled principles of statutory construction.

---

gift, or a mere offer to do any of these). In section 11000 both terms are deliberately used in their different senses in the same statute.

[3]The first dictionary definition of "transport" is, "to transfer or *convey* from one person or place to another: *carry,* move. . . ." (Italics added.) (Webster's New Internat. Dict. (3d ed. 1961), p. 2430.)

[4]On the other hand, the reference to "conceal" strongly suggests that the Legislature intended the definition of section 11012 to apply primarily to the former statutory mechanism for forfeiture of vehicles used to transport narcotics. (Health & Saf. Code, § 11610 et seq., repealed by Stats. 1967, ch. 280, § 1.) Thus the section immediately preceding section 11012 is a definition of "vehicle," while that immediately following it defines "owner . . . with reference to a vehicle," and all three were enacted simultaneously (Stats. 1939, ch. 60, § § 11011-11013). The statute further provided that "A vehicle used to transport any narcotic shall be forfeited to the State." (Stats. 1939, ch. 60, § 11610.) In that context the statutory enlargement of the layman's meaning of "transport" to include the act of "concealing" the contraband (§ 11012) created an indirect presumption that one who concealed narcotics in a vehicle did so with the ultimate intention of transporting them, or had already transported them by moving the vehicle to the place where it was seized. In the following year the Legislature transformed that presumption into a specific ground of forfeiture, amending section 11610 to declare such forfeiture of any vehicle "used to unlawfully transport any narcotic, or in which any narcotic is unlawfully kept, deposited or concealed" (Stats. 1940, First Ex. Sess., ch. 9, § 33). It cannot convincingly be argued that by failing to repeal section 11012 at the time it repealed the vehicle forfeiture statute, the Legislature impliedly manifested an intent that the section continue in vigor and apply to any other provision using the word "transport" in division 10 of the code: the Legislature also failed to repeal the preceding and following companion sections defining vehicle and vehicle owner "as used in this division" (§ § 11011 and 11013), yet there remains no provision whatever in division 10 which still uses either of those words.

To begin with, it is true that the operative words of section 11531—i.e., "transports, imports into this state, sells, furnishes, administers, or gives away"—are in the disjunctive rather than the conjunctive. But this means only that commission of any one of the prohibited acts is *sufficient to support a conviction* of violating the statute (*People* v. *Thompson* (1896) 111 Cal. 242, 247 [43 P. 748]; *In re Becerra* (1963) 218 Cal. App.2d 746 [32 Cal.Rptr. 910]; *People* v. *Williams* (1958) 164 Cal.App. 2d Supp. 858, 862 [331 P.2d 251], and cases cited); it does not mean that each of the terms is to be viewed in a vacuum, as if it stood alone in the text. On the contrary, it is settled that the intent of the Legislature must be gathered from the statute taken as a whole (*Mercer* v. *Perez* (1968) 68 Cal.2d 104, 112 [65 Cal.Rptr. 315, 436 P.2d 315]; *People* v. *Western Air Lines, Inc.* (1954) *supra,* 42 Cal.2d 621, 638), and that all parts of the statute must if possible be construed together and harmonized so as to effectuate that intent (*Ingram* v. *Justice Court* (1968) 69 Cal.2d 832, 839 [73 Cal.Rptr. 410, 447 P.2d 650]; *Burks* v. *Poppy Construction Co.* (1962) 57 Cal.2d 463, 470 [20 Cal.Rptr. 609, 370 P.2d 313]; *In re Bandmann* (1958) 51 Cal.2d 388, 393 [333 P.2d 339], and cases cited). To achieve this end, the doctrine of *noscitur a sociis* declares that the meaning of a word may be ascertained by reference to the meaning of other terms which the Legislature has associated with it in the statute, and that its scope may be enlarged or restricted to accord with those terms. (82 C.J.S., Statutes, § 331; 50 Am.Jur., Statutes, § 247; 45 Cal.Jur.2d, Statutes, §§ 118, 148.)

Applying these rules to the case at bar, it is apparent that a common thread runs through the operative words of section 11531: as distinguished from the passive state of being in possession of marijuana, each of these words implies an act by which that possession may be *transferred* from one person to another. Thus, one cannot, without doing violence to the English language, "sell," "furnish" or "give away" marijuana or anything else *to oneself:* the named acts require for their accomplishment that there be both a transferor and a transferee, and that ownership or possession of the substance pass from one to the other.[5] Under the foregoing principles

---

[5]In the context of section 11531 the same is true of the words "import" and "administer." Although it is physically possible for one to "administer" a drug to oneself, such an act is more accurately characterized as "using" the drug, and the Legislature has separately prohibited and punished it in section 11721. In section 11531 "administer" is preceded by the word "furnish" and followed by "gives away," and should therefore be deemed to have its dictionary meaning of "give or dispense to another." This is the same meaning, moreover, that it has in the immediately following companion section 11532, which punishes the act of "Every person of the age of 21 years or over who . . . sells, furnishes, administers, [or] gives . . . any marijuana to a minor. . . ."

Finally, although it is likewise possible for the term to bear a broader meaning,

of statutory construction the word "transport" as used in section 11531 must, by the same token, be given its "active" meaning of moving marijuana for the purpose of transferring ownership or possession thereof from one person to another.

That purpose may be further refined by an analysis of the larger legislative plan of which section 11531 is an integral part. Here, too, we are bound to harmonize the several elements of the plan in order to effectuate legislative intent. That intent, manifestly, is to combat the menace of illicit narcotics and dangerous drugs to our society. But the war proceeds on several fronts: the better to conquer, the Legislature has divided the enemy into more manageable elements, each representing a distinguishable phase of the drug problem. Analytically, there is a finite number of harmful things one can do with any illicit substance: one can make it, one can possess it, one can use it oneself, or one can sell it or give it away. In the case of marijuana, the Legislature has enacted a series of statutes separately declaring each of these acts a crime. (Health & Saf. Code, § § 11530.1 [cultivation], 11530 [possession], 11721 [use], 11531 [sale or gift].)[6]

Each of the statutes thus deals with a different, specific aspect of the overall problem, and we cannot presume there is overlapping or redundancy among their provisions. In particular, section 11531 is designed on its face to control the sale, gift, or other transfer of marijuana from one person to another—in other words, to control *trafficking* in this contraband. It cannot be assumed, in the light of the foregoing plan, that the Legislature intended the trafficking statute to also apply to the matter of *possession* of marijuana, fully dealt with elsewhere (e.g., § § 11530, 11530.5). Rather, to effectuate this scheme each term in section 11531 is to be given that meaning which will focus its prohibition on the problem of marijuana trafficking. It follows that as used in section 11531, "transport" means to move marijuana for the purpose of facilitating its sale or distribution to others; it was not intended to encompass movement which is merely an incident to possession of that contraband for personal use.[7]

the act of "importing" marijuana "into this state" is commonly understood to involve an out-of-state shipper, a local consignee, and the transfer of a commercial quantity of the contraband. Research has not disclosed any reported California decision construing it otherwise.

[6]A parallel series of statutes prohibits similar conduct with respect to narcotics other than marijuana (§ § 11500-11501) and restricted dangerous drugs (§ § 11910-11912). By way of additional controls, the Legislature has further made it a crime to possess narcotics paraphernalia (§ 11555), to knowingly be in a place where narcotics are being used (§ 11556), and to maintain a place for selling or using narcotics (§ 11557). (The statutory plan is set forth in the Appendix to this opinion.)

[7]The distinction may be illustrated by comparing the facts of the case at bar with those of a recent decision in which the defendant was properly convicted of trans-

### III

It is also settled that in construing a statute the courts may consider the "consequences that will flow from a particular interpretation." (*Estate of Ryan* (1943) 21 Cal.2d 498, 513 [133 P.2d 626]; *Bush* v. *Bright* (1968) 264 Cal.App.2d 788, 792 [71 Cal.Rptr. 123]; *Jaynes* v. *Stockton* (1961) 193 Cal.App.2d 47, 56 [14 Cal.Rptr. 49]; *Singh* v. *Superior Court* (1919) 44 Cal.App. 64, 68 [185 P. 985].) If those consequences are absurdity or injustice, the interpretation must be rejected. (*In re Cregler* (1961) 56 Cal.2d 308, 312 [14 Cal.Rptr. 289, 363 P.2d 305]; *People* v. *Darling* (1964) 230 Cal.App.2d 615, 620 [41 Cal.Rptr. 219]; *People* v. *Kuhn* (1963) 216 Cal.App.2d 695, 698 [31 Cal.Rptr. 253].) And if it is necessary to disregard the literal meaning of the words of the statute in order to avoid such absurd or unjust consequences, the courts must not hesitate to do so. (*Bruce* v. *Gregory* (1967) 65 Cal.2d 666, 673-674 [56 Cal.Rptr. 265, 423 P.2d 193]; *Silver* v. *Brown* (1966) 63 Cal.2d 841, 845-846 [48 Cal.Rptr. 609, 409 P.2d 689], and cases cited.) To achieve this end, the courts may either "read exceptions into the law" (*People* v. *Oliver* (1961) 55 Cal.2d 761, 766 [12 Cal.Rptr. 865, 361 P.2d 593]) or give "restricted meaning" to general words used in the statute (*In re Cregler* (1961) *supra*, 56 Cal.2d 308, 312).

In the case at bar an analysis of the statutory scheme is once again instructive, but this time from the standpoint of the penalties it prescribes. The inquiry reveals an elaborate pattern of punishments carefully graded in severity in two major respects. First, within each of the three major groups of offenses (i.e., narcotics other than marijuana; marijuana; and restricted dangerous drugs) the penalties increase in severity as one passes from (1) possession to (2) possession for sale to (3) trafficking to (4) sale by an adult to a minor. Secondly, as to each individual offense a similar progression of penalties is prescribed according to the number of prior felony narcotics convictions of the offender. (See, e.g., fn. 1, *ante*.)

---

porting marijuana in violation of section 11531. In *People* v. *Solo* (1970) 8 Cal. App.3d 201 [86 Cal.Rptr. 829], a Volkswagen sedan of distinctive appearance had been observed at the Mexican border; when a police car began following it on an interstate highway later that afternoon, the Volkswagen took evasive action; and while it was traveling at a high rate of speed, its right door was opened and a large laundry sack was thrown out. The sack contained 18 kilograms—almost 40 pounds —of marijuana. The defendant, an occupant of the Volkswagen, was found to have had dominion and control over the contraband in question, and was convicted inter alia of transporting marijuana under section 11531. That conviction was affirmed.

In sharp contrast, defendant in the case at bar was the driver of a car stopped for reasons unrelated to possession of narcotics. Eugene Earl, a passenger in the rear seat, was asked by the police to alight. In so doing, he kicked out of the car a matchbox containing a few ounces of marijuana. Defendant and Earl were acquitted on a charge of possession of marijuana, but defendant was nevertheless convicted of "transporting" the single matchbox of the drug in violation of section 11531.

The first of these progressions is particularly relevant here. From its elaborate terms we must infer that the differences among the penalties prescribed reflects the Legislature's considered judgment as to corresponding differences in degree of the social gravity of the conduct prohibited. For example, the Legislature must have deemed that trafficking in an illegal narcotic creates a greater danger to society than the act of possessing it for personal use—a conclusion eminently in accord with experience and common sense.

Turning now to the statute in issue, we note again that it prescribes a punishment[8] of imprisonment from five years to life and further directs that one so imprisoned shall not be eligible for release on parole or on any other basis until he has served at least three years of his term. Reading the statute with its companion sections, we find the punishment is more severe than that prescribed for the offenses of possession of heroin for the purpose of sale (§ 11500.5: five to fifteen years, minimum term two and one-half years) and possession of marijuana for the purpose of sale (§ 11530.5: two to ten years, minimum term two years), and is equal to the penalty imposed for actual sale of heroin (§ 11501) or marijuana (§ 11531). To construe section 11531 to apply to the movement of a small amount of marijuana incident to possession for personal use would therefore be to ascribe to the Legislature a belief that such conduct creates a social danger which is (1) more grave than the possession of commercial quantities of heroin or marijuana with the specific intent of trafficking in such drugs and (2) as serious as the very act of selling heroin or marijuana to others. Such a conclusion would be directly contrary to the just discussed common sense meaning of the statutory scheme, and would result in the kind of absurdity which the courts are required to avoid in the construction of legislative acts.[9]

Not only would the construction be anomalous, it would also be unjust. It would mean, for example, that of two men in possession of identical

---

[8]In this and the succeeding examples, the reference is to punishment for first offenders.

[9]The same point can be made analytically. It is clear from the terms of the narcotics statutes that the Legislature intends to deter, through punishment, the possession or use of or trafficking in illegal drugs. It is equally clear that the Legislature has no interest in the fact of their "transportation" as such: whether the contraband is in motion or at rest, it can present no danger to society unless and until it is knowingly possessed, used, or distributed. Certainly transportation can be punished as an *incident* to such possession, use, or trafficking; and when it is incident to the latter, it is appropriate to punish it as severely as trafficking is punished. But to construe section 11531 to punish transportation incident to possession for personal use more severely than simple possession would result in treating an incident of the conduct as a greater risk than the conduct itself. We cannot presume the Legislature intended this irrational consequence.

small amounts of marijuana for their personal use, one who was arrested when he was at rest (e.g., sitting in his house) could be punished only for simple possession, while the other who happened at the time to be in motion (e.g., driving along the street)—regardless of how innocent the purpose of that motion—could suffer the vastly greater penalties prescribed for "transportation" by section 11531. Indeed, section 11531 is in no way limited to transportation *by automobile,* and the hypothesized distinction could equally well arise between a man arrested while standing motionless on the sidewalk and his companion arrested moments later while walking along the same street. Such a chance difference in the facts is totally without criminological significance. There would obviously be no difference in culpability between the two men, and we cannot attribute to the Legislature an intent to commit the injustice of punishing the latter more severely than the former.

We should heed at this point the teaching of our decision in *People* v. *Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225]. We there rejected a construction of the kidnaping statutes under which any forcible movement of a robbery victim, no matter how brief or for what purpose, was deemed ipso facto to transform the robbery into the offense of aggravated kidnaping with its far heavier penalties. We held, rather, that the Legislature did not intend that consequence in any case in which the movement was "merely incidental to the commission" of the underlying crime and did not "substantially increase the risk of harm" to the victim. (*Id.* at p. 1139.) Such a movement, although within the literal terms of the statute, remained a "criminologically nonsignificant circumstance" (*id.* at p. 1138, quoting from Model Penal Code, Comments to § 212.1 (Tent. Draft No. 11, 1960) at p. 14).

Our purpose in *Daniels* was to avoid overreaching and injustice, and to bring California into the "current of common sense" (*id.* at p. 1127) in the construction and application of kidnaping statutes. By parity of reasoning, in the present context common sense tells us the Legislature cannot have intended to inflict the heavy punishment of the trafficking statute for an act of moving a small amount of marijuana which is merely an incident to the crime of possessing that contraband and does not substantially increase the attendant risk of social harm, i.e., by intentionally facilitating its sale or distribution to others.

IV

Prior to 1961 a person convicted of simple possession of marijuana in violation of section 11530 could be punished, in the discretion of the court,

either by a misdemeanor sentence in county jail or by a felony sentence in state prison. (Stats. 1959, ch. 1112, § 7.) In 1961 the Legislature abolished the alternative of a misdemeanor sentence. (Stats. 1961, ch. 274, § 7.) In the following years, however, dissatisfaction with the statutory punishment for possession of marijuana grew until a legislative committee recommended the reenactment of the misdemeanor alternative. (22 Assembly Interim. Com. Report No. 13, Criminal Procedure (1967-1968) p. 9.) At its 1968 session the Legislature accordingly amended section 11530 to permit the trial court to impose a county jail sentence in the case of first offenders. (Stats. 1968, ch. 1465, § 1.) This court has twice recognized the purpose of the amendment: in *People* v. *West* (1970) 3 Cal.3d 595, 605, footnote 5, we noted it was adopted "Because of widespread public criticism of the undue harshness" of the prior statute, and in *People* v. *Francis* (1969) 71 Cal.2d 66, 76 [75 Cal.Rptr. 199, 450 P.2d 591], we observed that "the Legislature has determined that the former penalty provisions may have been too severe in some cases. . . ."

The foregoing legislative history evidences a deliberate change of policy in favor of less severity towards those who possess marijuana for their own use; the remainder of the statutory scheme demonstrates, of course, a more punitive policy towards those who traffic in the drug. It is the duty of the courts not to blur the line of demarcation which the Legislature has thus clearly drawn. Yet that would be the precise effect of a holding that the act of moving a small amount of marijuana as an incident to its possession for personal use could be punished under the trafficking statute. For the reasons explained above, such an act is the criminological equivalent of simple possession; to treat it nevertheless as if it were an attenuated form of actual trafficking would be to violate the spirit if not the letter of the Legislature's recent change of policy.

Such a holding would also run counter to the experience of the practitioners in this field. The contemporaneous construction of a statute by those whose duty it is to carry it into effect, together with acquiescence by those having an interest in the matter, is entitled to great weight, and although not conclusive, will not be overturned unless clearly erroneous. (*Richfield Oil Corp.* v. *Crawford* (1952) 39 Cal.2d 729, 736 [249 P.2d 600] [administrative construction]; *Hoyt* v. *Board of Civil Service Commrs.* (1942) 21 Cal.2d 399, 402 [132 P.2d 804] [judicial construction].) A large number of arrests for possession of marijuana doubtless take place, as in this case, in or about an automobile; and in many others it is a reasonable inference that the defendant did not acquire the contraband at the exact point of the arrest, and hence must have brought it there from somewhere else. If the prosecuting authorities and the trial courts were of the view that such persons were guilty of "transportation" of marijuana under

section 11531 regardless of the amount of contraband involved or the purpose of their movement, one would expect to see this belief reflected in the conviction rates. But the contrary is true. In the reported cases, the vast majority of convictions of violating section 11531 are for acts of sale or furnishing of marijuana, rather than "transportation" of any kind.[10]

The reason for such figures is strongly suggested by a recent study of the practice in Los Angeles County: after interviewing both prosecutors and trial judges on this topic, the authors concluded: "Although no minimum amount is required by the statute, a major factor in deciding whether to file transportation charges is the quantity involved. If a large quantity is found the deputy will charge the defendant with sale and transportation. If a small quantity is involved the deputy will usually not file a complaint charging transportation because most judges are not sympathetic to the charge. *They believe that section 11531 and its stiffer penalties are intended to apply only to individuals who are distributing marijuana for sale.*" (Italics added; fn. omitted.) (*Marijuana Laws: An Empirical Study of Enforcement and Administration in Los Angeles County* (1968) 15 U.C.L.A. L.Rev. 1499, 1551.) We should not lightly depart from the construction thus placed upon section 11531 by the judges who are called upon to make the statute work, rationally and fairly, on a day-to-day basis. At the very least, we cannot say that their construction of the statute is "clearly erroneous." Under the foregoing rule of statutory interpretation, it is therefore presumptively correct.

## V

Finally, in my judgment none of the various arguments put forward in the majority opinion to support its reading of section 11531 will withstand critical analysis. For convenience of reference, I shall discuss them in the order they are stated in the majority opinion.

The majority first suggest (*ante*, p. 135) that had the Legislature intended to restrict the offense of transportation to movement of marijuana for the purpose of trafficking it could have easily done so by the expedient of calling the crime "transportation for sale," by analogy to the crime defined in section 11530.5 as "possession for sale." But the latter definition does not "restrict" the crime of simple possession; on the contrary, it broadens it to reach persons who are in fact traffickers in commercial quantities of

---

[10]Similarly, one would expect to see a high proportion of acts of simple possession punished as "transportation" because of the incidental movement in many. But the statistics are otherwise: in 1969, for example, there were 7,141 convictions of marijuana possession in the California superior courts, but only 639 of "sale," i.e., of *all* violations of section 11531 including the relatively few transportation convictions. (State of Cal., Crime & Delinquency in Cal. (1969) p. 122.)

marijuana but whom the police have not caught, or are unable to catch, in the act of making a sale. While the scope of criminal liability cannot be expanded by judicial construction, it can and should be contracted by the courts, as we have seen, when necessary to give effect to a larger legislative plan or to avoid irrationality or injustice flowing from a literal reading of the statute.

The majority next cite a group of cases which are said to "apply" section 11531 "whether or not the evidence disclosed that the contraband was intended for sale or distribution." In all but one of these cases, however, the issue now before us was neither raised nor decided. Rather, the opinions were concerned with such unrelated matters as the defendant's knowledge of the presence and narcotic character of marijuana in the car (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471 [62 Cal.Rptr. 581, 432 P.2d 197]), compliance with the *Leal* rule excluding liability for possession of a de minimis quantity of the drug (*People* v. *Johnson* (1970) 5 Cal.App.3d 844 [85 Cal.Rptr. 238]), and whether a conviction for both possession and transportation constitutes double punishment proscribed by Penal Code section 654 (*People* v. *Sanders* (1967) 250 Cal.App.2d 123 [58 Cal.Rptr. 259]).[11] The only cited case in point is *People* v. *Gurrola* (1963) 218 Cal.App.2d 349, 352 [32 Cal.Rptr. 368], but its analysis is wholly superficial: the opinion merely notes that the statute involved (there, § 11501) is "in the disjunctive and not in the conjunctive," and cites several of the irrelevant decisions now relied on by the majority. No hearing in the case was sought in this court.

The majority then quote language from our decision in *People* v. *Cressey* (1970) 2 Cal.3d 836, 849 [87 Cal.Rptr. 699, 471 P.2d 19], to the effect that section 11556 (knowingly being in a "place" where narcotics are being used) may constitutionally be applied to a person in his own residence or automobile, on the theory that he has "some control" over that "place" and may therefore have the responsibility of preventing its use for illegal narcotics purposes. The reference to "automobile" in *Cressey* is dictum, as the case dealt with a defendant arrested for use of marijuana in an apartment; but even if it were not (see *People* v. *Christensen* (1969) 2 Cal.App.3d 546, 548 [83 Cal.Rptr. 17], and cases cited), the analogy

---

[11]The majority also cite a decision (*People* v. *One 1940 Buick 8 Sedan* (1945) 70 Cal.App.2d 542 [161 P.2d 264]) construing the now-repealed statute providing for the forfeiture of vehicles used to transport narcotics. (*Ante,* fn. 4.) Later opinions on that statute, however, stress that "It is the purpose for which a car is used, not the mere use of it, which determines whether it was used unlawfully." (*People* v. *One 1959 Porsche Coupe* (1967) 252 Cal.App.2d 1044, 1049 [60 Cal.Rptr. 816]; see also *People* v. *One 1949 Chevrolet Sedan* (1963) 215 Cal.App.2d 292, 294 [30 Cal. Rptr. 79].)

fails because, as pointed out earlier, section 11531 is in no way limited to transportation by automobile. The section is equally applicable to one who transports concealed contraband along the street on foot, and it is obviously meaningless to speak of such a defendant's having "control" over any "place" whatever in those circumstances.

The majority next claim significance in the Legislature's failure to amend the substance of section 11531, in light of the above-discussed cases, at the time of certain technical changes in 1970. (Stats. 1970, ch. 1098, § 9.) As I have shown, those cases provided virtually no deliberate judicial "construction" of section 11531; and in any event, this court reiterated not long ago the weaknesses of such an inference of legislative approval based on mere inaction. (*People* v. *Daniels* (1969) *supra,* 71 Cal.2d 1119, 1127 and fn. 4.)

Seeking to justify the disparity in penalties between simple possession and "transportation" incident to possession for personal use, the majority then assert the Legislature "was entitled to assume" that the potential for harm *to others* is greater when narcotics are being transported from place to place rather than kept in one location. But surely this is true, by definition, only when the purpose of that transportation is to transfer possession or use of the contraband *to others,* i.e., to engage in its distribution.

The majority next state that the purpose of one who transports contraband is "often difficult or impossible to prove." But that purpose can usually be established by persuasive circumstantial evidence and reasonable inferences drawn therefrom, as the prosecution routinely does in cases charging possession of marijuana "for the purpose of" sale (§ 11530.5).[12] There may of course be an occasional instance in which the prosecution fails to prove to the satisfaction of the jury a narcotic peddler's true purpose; yet that small risk would be far outweighed by the certain injustice to improperly penalized narcotics users who also could not be shown to intend distribution of the contraband—but for the simple reason that they are not guilty of that intent. Contrary to the majority's suggestion, the Legislature could not constitutionally presume that every person who transports marijuana does so for the purpose of distribution, any more than it could constitutionally presume that every person who possesses marijuana does so for the purpose of sale. In either case there would be

---

[12]Among the various circumstances held to support a valid inference that the purpose of possession was sale are "the quantity of narcotic, the equipment found with it, the place it was found, the manner of packaging, and the opinion of an expert that the narcotic was being held for sale." (*People* v. *De La Torre* (1968) 268 Cal. App.2d 122, 126 [73 Cal.Rptr. 704], and cases cited.) The words or conduct of the defendant may also be relevant. (*Id.* at pp. 126-127; see also *People* v. *Ford* (1969) 271 Cal.App.2d 725, 729 [76 Cal.Rptr. 823].)

no rational connection between the fact proved and the fact presumed, so that the presumption would violate due process of law. (*People* v. *Stevenson* (1962) 58 Cal.2d 794, 797 [26 Cal.Rptr. 297, 376 P.2d 297], and cases cited.)

The majority further speculate that the Legislature may have deemed appropriate severer penalties for those who transport narcotics in order to "inhibit the frequency of their own personal use." But this ascribes redundancy to the legislative plan, as other statutes are specifically designed to control "personal use" (see §§ 11530 and 11721). Similarly, the suggestion that the Legislature wished to "restrict their access to sources of supply"—essentially a control on marijuana possession—implies an intent to punish an incident of that crime more harshly than the crime itself. The majority then propose a legislative purpose to "deter the use of drugs in vehicles in order to reduce traffic hazards and accidents." But aside from the point previously made that section 11531 is not limited to transportation by "vehicles," this proposal also ascribes legislative redundancy inasmuch as Vehicle Code section 23105 specifically punishes the act of driving a vehicle upon a highway by any person who is addicted to or under the influence of any narcotic drug.

Finally, the majority purport to be driven to their conclusion "in the absence of any legislative intent to the contrary" (*ante,* p. 137). As I have sought to demonstrate throughout this opinion, to discover ample evidence of such intent one has only to read the word "transport" in the light of the other words of section 11531 and the terms of the companion statutes in this manifestly deliberate legislative plan.

Peters, J., and Tobriner, J., concurred.

## APPENDIX

Health and Safety Code Narcotics and Drug Offenses

| Section | Subject Matter | Penalty for First Offense |
|---|---|---|
| 11500 | Possession of heroin | 2-10 years (2 years minimum) |
| 11500.5 | Possession of heroin for sale | 5-15 years (2½ years minimum) |
| 11501 | Transportation or sale of heroin | 5-life (3 years minimum) |
| 11502 | Sale of heroin to minor by adult | 10-life (5 years minimum) |
| 11502.1 | Sale of heroin to minor by minor | 1-5 years (no minimum) |

\* \* \*

| | | |
|---|---|---|
| 11530 | Possession of marijuana | Jail to 1 year or prison 1-10 years |
| 11530.1 | Cultivation of marijuana | 1-10 years (1 year minimum) |
| 11530.5 | Possession of marijuana for sale | 2-10 years (2 years minimum) |
| 11531 | Transportation or sale of marijuana | 5-life (3 years minimum) |
| 11532 | Sale of marijuana to minor by adult | 10-life (5 years minimum) |

\* \* \*

| | | |
|---|---|---|
| 11910 | Possession of restricted dangerous drug | Jail to 1 year or prison 1-10 years |
| 11911 | Possession of restricted dangerous drug for sale | 2-10 years (2 years minimum) |
| 11912 | Transportation or sale of restricted dangerous drug | 5-life (3 years minimum) |
| 11913 | Furnishing of restricted dangerous drug to minor by adult | 10-life (5 years minimum) |

\* \* \*

| | | |
|---|---|---|
| 11555 | Possession of narcotics paraphernalia | $500 fine or 180 days jail |
| 11556 | Being in place where narcotics are used | $500 fine or 180 days jail |
| 11557 | Maintaining place for selling or using narcotics | Jail to 1 year or prison 1-10 years |
| 11721 | Using or being under influence of narcotics | 90 days-1 year jail |