Filed 12/11/20  P. v. Coto CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072720 |
| v. | (Super.Ct.No. SWF1302612) |
| JAVIER ALEJANDRO ALFONSO COTO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. John M. Davis, Judge. Affirmed.

William J. Baker for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Robin Urbanski and Yvette M. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

In 2013, Javier Alejandro Alfonso Coto pleaded guilty to transporting more than an ounce of marijuana. In 2014, an immigration judge ordered Coto be deported based on

that conviction. In 2019, he filed a motion to vacate the conviction under a new statutory provision which allows offenders who aren't in custody to move to vacate a conviction where they weren't able to "meaningfully understand, defend against, or knowingly accept" the adverse immigration consequences of their plea and wouldn't have taken the plea if they had understood. (Pen. Code, § 1473.7, unlabeled statutory citations refer to this code.) The trial judge denied Coto relief.

Coto argues he's eligible because his attorney did not inform him his conviction would make deportation mandatory and he would not have taken the plea had he understood that. We affirm because substantial evidence supports a finding that Coto would have taken the plea despite the immigration consequences.

I

FACTS

Coto is a 29-year-old Cuban citizen. He immigrated to the United States in 2010 and received lawful permanent residency status in 2012. He speaks Spanish and knows only a few words of English.

In 2013, he was traveling northbound on Interstate 15 when a Customs and Border Protection (Border Patrol) agent stopped him. The agent discovered marijuana in his car.

The Riverside County District Attorney charged Coto with one count of possession of marijuana for sale (Health & Saf. Code, § 11359) and one count of transporting, selling, furnishing, or administering more than 28.5 grams of marijuana

2

(Health & Saf. Code, § 11360, subd. (a)). Coto hired private counsel to defend him against these charges, but his attorney "did not speak much Spanish."

Coto pleaded guilty to violating Health and Safety Code section 11360, subdivision (a). He signed a plea form and initialed 18 separate paragraphs saying he understood the potential consequences of his plea.[1] One said "[i]f I am not a citizen of the United States, I understand that this conviction *may have* the consequences of deportation, exclusion from admission to the United States, or denial of naturalization." (Italics added.) Another paragraph said, "I have had adequate time to discuss with my attorney . . . the consequences of any guilty plea." Coto's attorney also signed a paragraph saying he was "satisfied that . . . the defendant understands the consequences of his/her guilty plea." The form contained a blank line for an interpreter's signature.

The judge taking the plea reiterated many of these points on the record through a Spanish language interpreter. The judge asked Coto if he had had enough time with his attorney to talk about the consequences of his plea and whether he filled out his plea form freely and voluntarily. The judge asked specifically whether Coto understood if he was not a United States citizen "this plea may have the consequence of your deportation, denial of re-entry, or denial of naturalization." Coto answered yes to all these questions.

---

[1] Though the guilty plea form is not in the appellate record on its own, the People attached it as an exhibit in support of their opposition to Coto's motion in the trial court. Coto doesn't contest that the form was the one he signed.

In May 2014, the United States Department of Homeland Security initiated deportation proceedings against Coto because of the conviction. The following month, an immigration judge ordered him deported.

In 2019, Coto moved to set aside his guilty plea and submitted a declaration in support of his motion. In his declaration, he said his "attorney did not tell me that a drug conviction could get me deported," and that "[w]e never discussed the immigration consequences of the guilty plea." He said his "attorney filled out a form. The attorney said that the form was to plead guilty. The attorney spent a few minutes going over the form. . . . I did not read the form because it was in English. No one translated the form to me in Spanish." Finally, he said "[i]f I had known that my conviction in this case would result in my deportation and lifetime inadmissibility, I would have never pleaded guilty."

At a hearing on the motion, the trial judge said he considered Coto's motion, the exhibits in support of the motion (including Coto's declaration and Department of Homeland Security documents), Coto's plea agreement, and the People's opposition to the motion. Coto's counsel argued that although he signed the plea form, it was never translated for his benefit. He also argued the advisements on the form were improper, as they said Coto "may" be subject to deportation rather than "will" be subject to deportation. Coto's counsel also argued that Coto faced serious consequences if he were to be deported back to Cuba, because he didn't "know what the Cubans will do to him for someone who escaped their tyranny."

The People argued Coto failed to show he was not advised of the immigration consequences of his plea, that there was another plea bargain on the table that would have allowed him to avoid immigration consequences, or that the court didn't properly advise him of the consequences of his plea. They further argued that though the plea form wasn't signed by an interpreter, the minute order from the day he entered his plea showed an interpreter was present to take the plea.

The trial judge expressed skepticism that the plea form wasn't translated, asking defense counsel, "Why do you think it wasn't? We have the name of our best translator . . . named as being the translator on this case." The judge acknowledged the plea form wasn't signed by the translator, but reminded defense counsel that it was Coto's burden "to convince me that he did not understand . . . the consequences of his plea."

The judge then turned to the precise phrasing of the advisement on the plea form. In doing so, he noted "there was a recent case that said that maybe the wording should be changed to will have," instead of "may have" the consequence of deportation. The judge said, "we aren't here to decide what ICE or the federal government is going to be doing with the defendant because not everybody gets deported," but said he was "open-minded still to hear from either" party. The parties then argued about what the precise wording of the plea form should be.

Finally, the trial judge expressed skepticism that Coto faced serious consequences from deportation, noting "it would be very speculative to think that [Coto] being sent to

Cuba would have bad negative consequences. They aren't . . . lining these people up against the wall and shooting them because they tried to leave," and therefore he felt "it's hard for me to give[] much weight to that."

The trial judge denied the motion without stating his reasons, and Coto timely appealed.

## II

## DISCUSSION

Coto argues the trial judge should have granted his motion to vacate his conviction because his counsel never advised him of the immigration consequences of his plea.

A. *Timeliness*

First, we address the People's argument that Coto's motion under section 1473.7 was untimely. A section 1473.7 motion based on a claim of prejudicial error "may be deemed untimely filed if it was not filed with reasonable diligence after the later of," the moving party receiving "a notice to appear in immigration court or other notice from immigration authorities that asserts the conviction or sentence as a basis for removal," or "[n]otice that a final removal order has been issued against the moving party, based on the existence of the conviction." (§ 1473.7, subd. (b)(2).)

We conclude Coto acted promptly because the theory of relief he asserts wasn't viable until just days before he filed his motion. Though section 1473.7 initially became effective January 1, 2017, it was amended effective January 1, 2019. (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1006 (*Camacho*).) This amendment expanded the types of

errors which allowed a moving party to vacate their conviction. Before the amendment "California courts uniformly interpreted section 1473.7 under the existing and long-standing rules for constitutional [ineffective assistance of counsel] claims." (*People v. Mejia* (2019) 36 Cal.App.5th 859, 869 (*Mejia*).) After the amendment, " 'a finding based on prejudicial error may, but need not, include a finding of ineffective assistance of counsel and that the only finding that the court is required to make . . . is whether the conviction is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.' " (*Ibid*., italics omitted.)

Coto filed his motion on January 3, 2019, three days after this change. He doesn't claim he received ineffective assistance of counsel, only that his counsel prejudicially erred in a way that damaged his ability to understand his plea. His motion was therefore timely.

B. *Standard of Review*

Where a section 1473.7 motion "asserts statutory error or a deprivation of statutory rights," as opposed to a violation of the constitutional right to counsel, we review the order denying the motion for abuse of discretion. (*People v. Rodriguez* (2019) 38 Cal.App.5th 971, 977.)

"Accordingly, we ask whether the trial court's findings of fact are supported by substantial evidence, whether its rulings of law are correct, and whether its application of

7

the law to the facts was neither arbitrary nor capricious." (*People v. Superior Court* (*Humberto S.*) (2008) 43 Cal.4th 737, 746.)

C. *Prejudice*

Section 1473.7, subdivision (a)(1), allows anyone not in criminal custody to file a motion to vacate a conviction if "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty . . . ." The moving party must establish entitlement to relief by a preponderance of the evidence. (§ 1473.7, subd. (e)(1).) We conclude Coto met his burden in showing error, but not prejudice.[2]

1. *Counsel's Error*

Where a party moves to vacate their conviction under section 1473.7, the moving party must show only "that one or more of the established errors were prejudicial and damaged his 'ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of [his] plea.' " (*Camacho*, *supra*, 32 Cal.App.5th at pp. 1008-1009; see *Mejia*, *supra*, 36 Cal.App.5th 859.) A court should vacate a plea if "the defendant simply proves by a preponderance of the evidence a

---

[2] Section 1473.7, subdivision (d), entitles the moving party to a hearing. The trial judge held a hearing, but it isn't clear from the record whether he allowed the parties to present evidence beyond what was contained in the record of conviction and the parties' submissions. We requested supplemental briefing on the sufficiency of the hearing. The parties agree the statute does require an evidentiary hearing. However, Coto argues a full evidentiary hearing wasn't necessary, so we don't address whether the hearing in this case was adequate.

'prejudicial error damaging the moving party's ability to *meaningfully understand*, defend against, or *knowingly accept* the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.' " (*Mejia,* at p. 871.)

Coto made a showing of error here. The People's primary piece of evidence refuting Coto's claim that he didn't understand the consequences of his plea is a plea form which both Coto and his attorney signed. This form acknowledged they had enough time to discuss and consider the consequences of Coto's plea and advised Coto of potential immigration consequences. However, the entire plea form is in English. Coto speaks only a few words of English, his counsel doesn't speak Spanish, and no interpreter signed the plea form to confirm they translated it for Coto. Given the language barrier, an interpreter was necessary to ensure Coto understood and knowingly waived his rights—which is why the trial judge used a Spanish language interpreter when speaking to Coto when taking the guilty plea. Despite this, both the unsigned form and Coto's declaration support his claim that the form wasn't translated.

It is unclear whether the trial judge made a factual finding that Coto did have an interpreter when signing the form. He did express skepticism of Coto's claim that the form was not translated. However, such a finding wasn't supported by sufficient evidence to uphold the trial court's order denying Coto's motion. Every piece of evidence in the record—both Coto's declaration and the form itself—supports Coto's claim the form wasn't translated. The only evidence contradicting this claim is the fact that Coto was provided an interpreter for his on the record communications with the court. But the

record is so barren that neither we nor the trial judge could reasonably conclude the form was signed in the courtroom or with the oversight of the court's interpreter. In short, the record contains no evidence the form was translated, and at least one contemporary piece of evidence which corroborates Coto's claim it wasn't. We conclude there is insufficient evidence to find Coto's admissions on the form show he was aware of the immigration consequences of his plea.

Even if Coto's attorney did effectively communicate the contents of the plea form, that isn't sufficient. (*People v. Soriano* (1987) 194 Cal.App.3d 1470, 1478-1479.) In *People v. Soriano* the moving party's counsel testified she advised her client " 'in a general sense, that is, the same language that is used in the admonition I used in court, that such a plea could have consequences on his immigration status, his naturalization, deportation and exclusion from admission.' " (*Id.* at p. 1479.) The court held that "[e]ven assuming counsel's version of events is the correct one, her response to defendant's immigration questions was insufficient," because "she merely warned defendant that his plea might have immigration consequences," and further research would have revealed his sentence made him deportable. (*Id.* at p. 1482.) Thus, even if Coto's counsel did bridge the language gap and go through the plea form with him, the form's boilerplate advisement that "this conviction may have the consequences of deportation," was not sufficient advice from a constitutional perspective, let alone a statutory one. Nor were the court's own advisements sufficient to cure this misunderstanding, as a court's "generic

10

advisement under section 1016.5 is not designed, nor does it operate, as a substitute for such advice." (*People v. Patterson* (2017) 2 Cal.5th 885, 898.)

Accordingly, we conclude Coto established his counsel erred by failing to advise him of the immigration consequences of his plea.

*2. Prejudice*

Though we find Coto established his counsel erred, he also needed to show prejudice. "A 'prejudicial error' occurs under section 1473.7 when there is a reasonable probability that the person would not have pleaded guilty—and would have risked going to trial (even if only to figuratively throw a 'Hail Mary')—had the person known that the guilty plea would result in mandatory and dire immigration consequences." (*Mejia*, *supra*, 36 Cal.App.5th at p. 871, italics omitted.)

A defendant establishes prejudice where they show " ' "it is 'reasonably probable' the defendant would not have pleaded guilty if properly advised." ' " (*People v. Martinez* (2013) 57 Cal.4th 555, 562 (*Martinez*), quoting *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 210; see *Camacho*, *supra*, 32 Cal.App.5th at p. 1010 [holding "[t]he principles found in *Martinez* and *Lee* apply equally to a prejudice analysis under section 1473.7"].) "[T]he test for prejudice considers what the defendant would have done, not what the effect of that decision would have been." (*Martinez*, at p. 564.)

To show prejudice, a moving party must at minimum "provide a declaration or testimony stating that he or she would not have entered into the plea bargain if properly advised." (*Martinez*, *supra*, 57 Cal.4th at p. 565.) Once they provide such a declaration

11

"[i]t is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances." (*Ibid.*) In assessing the credibility of a moving party's claim they wouldn't have entered a plea but for some error, a court may look at a number of factors, including the moving party's history with the United States, the length of their residency, their family ties here versus in their country of origin, and the strength of the evidence supporting the underlying conviction. (See *Mejia*, *supra*, 36 Cal.App.5th at p. 872.)

Under these standards, the trial court was within its power to find Coto's declaration not credible for lack of corroborating evidence. Coto doesn't even try to call into question the evidence supporting his underlying conviction. For instance, nowhere in the record does Coto or any other party disclose how much marijuana he had when the Border Patrol pulled him over. This is relevant because a first time offender's possession for personal use of less than 30 grams of marijuana does not render the offender deportable—the only exception to the general rule that a drug possession conviction of any kind renders someone deportable. (8 U.S.C. § 1227(a)(2)(B)(i).) Coto pleaded to felony transportation of marijuana, which required only that he knowingly transported more than 28.5 grams of marijuana. (Former Health & Saf. Code, § 11360; Stats.2011, ch. 15, § 162 [eff. Apr. 4, 2011]; *People v. Rogers* (1971) 5 Cal.3d 129, 137, [illegal transportation of marijuana "requires only a knowing transportation . . . whether for personal use, sale, distribution or otherwise"], superseded by statute as recognized in

*People v. Martinez* (2018) 4 Cal.5th 647.) Therefore, it was possible for a defendant to plead to the exact same charge as Coto, but not face any immigration consequences if they had less than 30 grams of marijuana but more than 28.5 grams, all of it for personal use. Despite this, Coto's only attempt to challenge the strength of the evidence against him is to claim the marijuana in his car, which he was driving alone, didn't belong to him.

In addition, the trial court could have looked at the other factors and determined Coto had very little incentive to fight the conviction and risk jail time rather than plead. Coto's ties to the United States were minimal. He had immigrated to the United States only three years before his arrest, when he was in his late teens. He wasn't married and had no children when he signed his declaration. And though his declaration says he has "family ties" in the United States, he didn't identify any family members residing here.

This case is thus distinguishable from *Camacho* and *Mejia*, which involved defendants who had lived in the United States for at least eight years at the time of their crimes, had significant immediate personal family ties, few ties to their country of origin, and in *Mejia* "some lingering questions about the strength of the underlying evidence" of the conviction. (*Mejia*, *supra*, 36 Cal.App.5th at pp. 872-873; see *Camacho*, *supra*, 32 Cal.App.5th at p. 1011.)

Given Coto's minimal ties to the United States, his failure to challenge the strength of the evidence against him, and the lack of any other evidence corroborating Coto's declaration, there was sufficient evidence for the trial court to conclude Coto's

declaration was not credible. Accordingly, we conclude that though Coto has demonstrated an error affecting his ability to "meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty," under section 1473.7, he didn't show he would have rejected the plea if he'd been advised properly.

## III

## DISPOSITION

We affirm the order denying defendant's section 1473.7 motion to vacate.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH
J.

We concur:

McKINSTER
Acting P. J.

RAPHAEL
J.